**CLARKSON LAW FIRM, P.C.**
Ryan J. Clarkson (SBN 257074)
rclarkson@clarksonlawfirm.com
Bahar Sodaify (SBN 289730)
bsodaify@clarksonlawfirm.com
Christina N. Mirzaie (SBN 333274)
cmirzaie@clarksonlawfirm.com
22525 Pacific Coast Highway
Malibu, CA 90265
Tel: (213) 788-4050
Fax: (213) 788-4070

*Attorneys for Plaintiff*

CLARKSON LAW FIRM, P.C.
22525 Pacific Coast Highway
Malibu, CA 90265

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MELINDA WRIGHT, individually and on behalf of all others similarly situated,<br><br>          Plaintiff,<br><br>     vs.<br><br>COSTCO WHOLESALE CORPORATION, a Washington corporation,<br><br>          Defendant. | Case No.<br><br>**CLASS ACTION COMPLAINT**<br><br>1.  VIOLATION OF CALIFORNIA CONSUMERS LEGAL REMEDIES ACT, CIVIL CODE § 1750, *et seq.*<br><br>2.  VIOLATION OF CALIFORNIA FALSE ADVERTISING LAW, BUSINESS AND PROFESSIONS CODE § 17500, *et seq.*<br><br>3.  VIOLATION OF CALIFORNIA UNFAIR COMPETITION LAW, BUSINESS AND PROFESSIONS CODE § 17200, *et seq.*<br><br>4.  BREACH OF EXPRESS WARRANTY<br><br>5.  BREACH OF IMPLIED WARRANTY<br><br>6.  UNJUST ENRICHMENT<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff Melinda Wright ("Plaintiff"), individually and on behalf of all others similarly situated, by and through her attorneys, bring this class action against Defendant Costco Wholesale Corporation ("Defendant" or "Costco") and alleges as follows:

CLARKSON LAW FIRM, P.C.
22525 Pacific Coast Highway
Malibu, CA 90265

## NATURE OF THE ACTION

1.     Costco falsely and deceptively advertises and labels its tuna products, including its Kirkland Signature White Albacore Tuna in Water, as "DOLPHIN SAFE" (the "Product(s)"). Costco's false advertising scheme deceives millions of consumers into believing the Products are "DOLPHIN SAFE," meaning they are manufactured using fishing methods that neither kill nor harm dolphins. However, the grim reality is that the Products are sourced using fishing methods that seriously injure and kill thousands of dolphins and other marine life each year. Costco knowingly and intentionally labels and advertises its Products as "DOLPHIN SAFE," to increase profits at the expense of sustainability concerned consumers and innocent marine life, while gaining an unfair economic advantage over their law-abiding competitors that sell truly "DOLPHIN SAFE" tuna products. *See* Defendant's Product packaging and official website, depicted in Exhibits 1-6, below.[1]

///

///

///

///

///

///

///

///

///

///

///

///

///

///

---

[1] Website descriptions and images of the Products were taken from Defendant's official website: Costco Wholesale, Home / Grocery, Household Essentials & Pet / Pantry & Dry Goods / Canned Goods, https://www.costco.com/kirkland-signature-solid-white-albacore-tuna-inwater%2c-7-oz%2c-8-count.product.100340189.html.

CLASS ACTION COMPLAINT

CLARKSON LAW FIRM, P.C.
22525 Pacific Coast Highway
Malibu, CA 90265

**Exhibit 1: Individual Can, Front View**



**Exhibit 2: Bulk Package Type, Front View**



**Exhibit 3: Bulk Package Type, Top View**



**Exhibit 4: Defendant's Website Description, Product View**



CLARKSON LAW FIRM, P.C.
22525 Pacific Coast Highway
Malibu, CA 90265

CLARKSON LAW FIRM, P.C.
22525 Pacific Coast Highway
Malibu, CA 90265

**Exhibit 5: Defendant's Website Description, Product Details**

## Product Details

Item availability may vary by area.  Please try item #912291

- Solid White Albacore Tuna
- Superior quality tuna packed in water
- Dolphin safe
- Kosher Parve
- 7 oz. can
- 8 ct

**Exhibit 6: Defendant's Website Description, Product Details**



CANNED TUNA

Kirkland Signature™ Albacore canned tuna suppliers are participants in the International Seafood Sustainability Foundation (ISSF), which is undertaking science-based initiatives for the long-term conservation and sustainable use of tuna stocks, reducing bycatch and promoting ecosystem health. Each participating company is audited by a third party for compliance with ISSF conservation measures.

Costco is a founding member of the Seafood Taskforce and works in collaboration with other member companies and industry stakeholders to improve working conditions and the recruitment process for migrant workers on fishing vessels.

Learn more about the STF's work on Responsible Recruitment.

2.      Defendant's "DOLPHIN SAFE" claims are false, misleading, deceptive, unfair, fraudulent, and unlawful under California's Consumers Legal Remedies Act ("CLRA"), Civil Code Section 1750, *et seq.*, Unfair Competition Law ("UCL"), Business and Professions Code Sections 17200, *et seq.*, and the False Advertising Law ("FAL"), 17500, *et seq.* Defendant has also been unjustly enriched and has breached its express and implied warranties about the

Products. Defendant's false and deceptive claims are uniformly advertised through its labeling, packaging, and website. Through its false and deceptive advertising, Defendant has misled Plaintiff and other reasonable consumers into buying the Product at stores across California and the United States based on its material claims that the Product is created and manufactured in a manner that is "DOLPHIN SAFE."

3.      Plaintiff brings this action individually and on behalf of those similarly situated to represent a Nationwide Class and a California Class (described *infra*). Plaintiff seeks injunctive relief to cure Defendant's unlawful labeling and advertising of the Products and restitution for money wrongfully acquired by Defendant.

## JURISDICTION

4.      This Court has subject matter jurisdiction of this action pursuant to 28 U.S.C. Section 1332 and the Class Action Fairness Act of 2005 because: (i) there are 100 or more class members, (ii) there is an aggregate amount in controversy exceeding $5,000,000, exclusive of interest and costs, and (iii) there is minimal diversity because at least one plaintiff and defendant are citizens of different states. This Court has supplemental jurisdiction over any state law claims pursuant to 28 U.S.C. Section 1367.

5.      Defendant is subject to personal jurisdiction in California based upon sufficient minimum contacts which exist between Defendant and California.  Defendant is authorized to do and is doing business in California.

## VENUE

6.      Pursuant to 28 U.S.C. Section 1391, this Court is the proper venue for this action because a substantial part of the events, omissions, and acts giving rise to the claims herein occurred in this District. Plaintiff is a citizen of California, resides in this District, and purchased the Product within this District. Moreover, Defendant receives substantial compensation from sales in this District, and Defendant made numerous misrepresentations which had a substantial effect in this District, including, but not limited to, label, packaging, and internet advertisements, among other advertising.

///

CLARKSON LAW FIRM, P.C.
22525 Pacific Coast Highway
Malibu, CA 90265

CLARKSON LAW FIRM, P.C.
22525 Pacific Coast Highway
Malibu, CA 90265

**PARTIES**

**A.   Plaintiff**

7.      **Plaintiff Wright.** The following is alleged based upon personal knowledge: (1) Plaintiff Melinda Wright ("Plaintiff") is, and at all times relevant hereto was, a citizen and resident of Lake County, California. (2) Plaintiff purchased the Product from a Costco store located in Ukiah, California in 2021. Plaintiff paid approximately $15.00 for a pack of 8 cans of the Product. (3) In making her purchase, Plaintiff relied upon the Product labeling, packaging, and advertising that the Products were "DOLPHIN SAFE." The Product was prepared and approved by Defendant and its agents and disseminated statewide and nationwide, as well as designed to encourage consumers to purchase the Products. The Product's labeling and advertising led Plaintiff to believe that the Product was "DOLPHIN SAFE"—i.e., the tuna sourced for sale of the Product were caught using fishing methods that do not kill or injure dolphins. (4) At the time of purchase, Plaintiff did not know that the "DOLPHIN SAFE" representation was false—i.e., Plaintiff did not know that the Product was sourced from tuna caught using fishing methods that kill and injure dolphins. (5) If Plaintiff had known that the Products were not "DOLPHIN SAFE," then Plaintiff would not have purchased the Products, and certainly would not have paid a "premium" for such a valued perceived benefit. (6) Plaintiff continues to see the Products available for purchase and intends to purchase them again under the assumption that Defendant has cured its unlawful business practices and the "DOLPHIN SAFE" representations are in fact true —i.e., Defendant truthfully used fishing practices which do not kill or injure dolphins in the sourcing of the tuna used for the Products. (7) Plaintiff is not personally familiar with, and does not possess any specialized knowledge skill, experience, or education, in the manufacture of tuna products, commercial fishing methods, or dolphin feeding practices, and, therefore, Plaintiff has no way of determining whether Defendant is actually using "DOLPHIN SAFE" fishing methods as it claims. (8) Plaintiff is, and continues to be, unable to rely on the truth of the "DOLPHIN SAFE" attribute on the Products' labels.

8.      **Plaintiff's Likely Future Harm**. Plaintiff intends to purchase the Products again with the hope of consuming tuna products which, as advertised, are truly "DOLPHIN SAFE,"

CLARKSON LAW FIRM, P.C.
22525 Pacific Coast Highway
Malibu, CA 90265

despite the fact that they were once marred by false advertising and labeling. If by that time the Products are not improved by using "DOLPHIN SAFE" fishing practices, as Plaintiff would reasonably, but incorrectly, assume, then Plaintiff is at risk of being deceived again. In that regard, Plaintiff is an ordinary consumer who has no ability to know what fishing practices Defendant is actually using or whether those fishing practices kill or injure dolphins. Accordingly, Plaintiff is at risk of reasonably, but incorrectly, assuming that Defendant fixed its fishing practices such that Plaintiff may buy the Products again, believing they were no longer falsely advertised. Plaintiff is, therefore, currently and in the future deprived of the ability to rely on the "DOLPHIN SAFE" representations.

**B.    Defendant**

9.    **Defendant Costco.** Defendant Costco Wholesale Corporation ("Costco") is a nationwide corporation headquartered in Isaaquah, Washington. Costco Wholesale Corporation maintains its principal corporate office at 999 Lake Drive, Isaaquah, Washington 98027. Costco Wholesale Corporation directly and through its agents, has substantial contacts with and receives substantial benefits and income from and through the State of California. Costco Wholesale Corporation is the owner, manufacturer, and/or distributor of the Kirkland Tuna Product line, and is a company that created and/or authorized the false, misleading, and deceptive labeling and packaging for the Products.

10.    ***Respondeat Superior***. Defendant and its agents manufactured, advertised, marketed, and sold the Products at issue in this jurisdiction and in this judicial district. The unfair, unlawful, deceptive, and misleading false advertising claims on the Products were prepared, authorized, ratified, and/or approved by Defendant and its agents, and, accordingly, disseminated throughout the State of California and the nation by Defendant and its agents in order to deceive and mislead consumers into purchasing the Products.

///

///

///

///

CLARKSON LAW FIRM, P.C.
22525 Pacific Coast Highway
Malibu, CA 90265

**FACTUAL ALLEGATIONS**

A.   **Background**

11.   **Dolphins.** Dolphins are small-toothed cetaceans that prey on low-mid trophic level fishes and cephalopods. There are thirty-six species of dolphin, which are found in every ocean.[2] Like all predators, dolphins play an important role in keeping ecosystems balanced: "Without dolphins, the animals they prey on would increase in number, and their predators wouldn't have as much to eat. This would disrupt the natural balance in the food chain and could negatively affect other wildlife and the health of the ocean environment."[3] By dispersing nutrients and mixing water in stratified oceans and rivers, dolphins play a vital role in sustaining and maintaining all sea life.[4] Because billions of people depend on the ocean and oceanic fish for food, dolphins function to sustain human life as well. Additionally, dolphins are extremely intelligent animals. Indeed, dolphins may be Earth's second smartest creatures next to humans.[5] Despite their ecological importance and extreme intelligence, dolphins are disappearing at alarming rates. Among other factors, dolphins are threatened by the commercial fishing industry. In fact, sixteen species of whales and dolphins are considered in danger of extinction due to human influences.[6] In recent years, consumers have become increasingly concerned about protecting the environment, including dolphins, through individual action, such as purchasing "DOLPHIN SAFE" tuna products, which are made from tuna harvested using a method of fishing that does not kill or injure dolphins. Thus, "DOLPHIN SAFE" tuna products, such as the Products in this case, are rapidly increasing in popularity due to their perceived positive ecological benefit.

---

[2] *Dolphins*, NATIONAL GEOGRAPHIC,
https://www.nationalgeographic.com/animals/mammals/facts/dolphins#:~:text=Dolphins%20are%20small%2Dtoothed%20cetaceans,or%20brackish%20waters%20along%20coastlines.
[3] *Bottlenose Dolphins: Our Smart, Sociable Stars of the Sea*, WWF,
https://www.wwf.org.uk/learn/wildlife/dolphins#:~:text=Without%20dolphins%2C%20the%20animals%20they,health%20of%20the%20ocean%20environment.
[4] Jeremy Kiszka, Matthew S. Woodstock, & Michael R. Heithaus, *Functional Roles and Ecological Importance of Small Cetaceans in Aquatic Ecosystems*, FRONTIERS (Feb. 25, 2022), https://www.frontiersin.org/articles/10.3389/fmars.2022.803173/full.
[5] David Grimm & Greg Miller, *Is a Dolphin a Person?*, SCIENCE (Feb. 21, 2010), https://www.science.org/content/article/dolphin-person.
[6] *Endangered Species*, DOLPHIN RESEARCH CENTER,
https://dolphins.org/endangered_species#:~:text=Overview-,Overview,to%20the%20Endangered%20Species%20Act.

9

CLARKSON LAW FIRM, P.C.
22525 Pacific Coast Highway
Malibu, CA 90265

12.     For decades, commercial fisheries across the globe have posed the greatest threat to marine wildlife and have decimated fish populations, wiping out ninety percent of all large fish. Today, the global tuna industry alone is worth roughly 42 billion dollars.[7] In addition to threatening fish species, commercial fisheries have also long endangered cetacean species (whales, dolphins, and porpoises), killing roughly 300,000 cetaceans each year.[8] As consumers have become more aware of the damaging effects of commercial fishing on both oceanic fish and mammal species alike, calls for efforts to curb the harmful effects of certain fishing practices have become more prevalent within the fishing industry.

13.     In 1990, Earth Island's International Marine Mammal Project ("IMMP") developed the "DOLPHIN SAFE" concept and label, specifically to be used for canned tuna, in response to the unsafe fishing practices that were being used to harvest tuna.[9] Now, more than 800 tuna companies display and adhere to "DOLPHIN SAFE" practices.[10] According to IMMP, "DOLPHIN SAFE" means that "tuna [is] caught without deliberately encircling any dolphins with tuna nets during the entire trip of the tuna vessel;" this definition was codified into federal law under the Dolphin Conservation Consumer Education Act of 1990.[11] These standards were later broadened by the IMMP and Congress to ban tuna companies from using the label if *any* dolphins were *even* accidentally killed or seriously injured in the production of their tuna.[12]

14.     However, recently it has been discovered that some of the largest tuna companies in the industry are defrauding consumers by claiming that their products are "DOLPHIN SAFE," when they are not.[13] Many tuna products that tout the "DOLPHIN SAFE" claim are still made with tuna that is caught using purse seines and longlines, both of which pose significant risks to

---

[7] Tom Levitt, *Overfishing Puts $42bn Tuna Industry at Risk of Collapse*, THE GUARDIAN (May 2, 2016), https://www.theguardian.com/sustainable-business/2016/may/02/overfishing-42bn-tuna-industry-risk-collapse.
[8] *Seaspiracy*, https://www.seaspiracy.org/.
[9] International Marine Mammal Project, "What does Dolphin Safe Mean?" https://savedolphins.eii.org/news/what-does-dolphin-safe-mean.
[10] *Id.*
[11] *Id.*
[12] *Id.*
[13] National Geographic, "How Safe is Dolphin-Safe Tuna, Really?" https://www.nationalgeographic.com/animals/article/how-dolphin-safe-is-canned-tuna.

CLARKSON LAW FIRM, P.C.
22525 Pacific Coast Highway
Malibu, CA 90265

dolphins and lead to large numbers of bycatch. Indeed, some scientists claim that bycatch is an "inescapable certainty" of any commercial fishing operation.[14]

15.    Scientists say that an inevitable consequence of commercial fishing is incidental bycatch, which refers to the unintentional hooking or ensnaring of marine life.[15] Marine mammals such as dolphins and whales caught as a result of bycatch are unable to surface for air, causing suffocation and a painful death.[16] The following practices are associated with dolphin bycatch: "gillnets, purse seine nets, fish aggregating devices, and longlines."[17]

16.    Longline fishing, for example, involves lines that can be as long as 62 miles that have as many as 10,000 baited hooks attached, and draws the line in every 12-24 hours, killing and harming numerous marine mammals.[18] A report from the National Resources Defense council states that scientists estimate over 650,000 marine mammals are killed or seriously injured every year as a result of incidental bycatch.[19] Therefore, any company which uses fishing practices that ultimately result in incidental bycatch, cannot truthfully claim their products are "DOLPHIN SAFE."

17.    Despite what seems to be an already staggering number, the figure is likely even higher, since commercial fishermen are incentivized to underreport bycatch, which is facilitated by rampant lack of accountability and widespread unreliable reporting on bycatch. In fact, in 2005, less than half of the fishing vessels around the world recorded quantitative statistics on annual bycatch.[20] This problem holds true in the United States as well. Despite federal legislation such as the Magnuson-Stevens Act requiring detailed reporting on bycatch statistics by U.S. fisheries, there are too few unbiased reporters onboard fishing vessels to get an accurate metric of annual bycatch. Exacerbating this problem is the lack of governmental reporting. The U.S. National Marine Fisheries Service last provided an update to its U.S. National Bycatch Report in

---

[14] *Id.*

[15] *Id.*

[16] *Id.*

[17] *Id.*

[18] Fitzgerald KT. Longline fishing (how what you don't know can hurt you). Top Companion Anim Med. 2013 Nov;28(4):151-62. doi: 10.1053/j.tcam.2013.09.006. PMID: 24331555.

[19] National Resources Defense Council, "Net Loss: The Killing of Marine Mammals in Foreign Fisheries," Pg. 4, https://www.nrdc.org/sites/default/files/mammals-foreign-fisheries-report.pdf.

[20] Amanda Keledjian, et al., Wasted Catch: Unsolved Problems in U.S. Fisheries, Oceana (2014), available at https://oceana.org/reports/wasted-catch-unsolved-problems-us-fisheries/.

2019, but this update was based on data from 2014 and 2015.[21] A recent report found that "*only four* out of hundreds of U.S. fisheries are meeting the recommended standards for the statistical accuracy and validity of their catch data, if they report data at all." [22]

18.     This lack of transparency, combined with the self-policing nature of the industry allows major tuna producers and distributors like Defendant to reap the benefits of harmful fishing practices all the while advertising their products to unsuspecting consumers as "DOLPHIN SAFE."

19.     **Dolphin Protection Consumer Information Act.**  Congress enacted the Dolphin Protection Consumer Information Act ("DPCIA") in order to protect marine mammals killed in the course of tuna fishing operations due to driftnet fishing.[23] Congress specifically enacted this statute regarding the labeling of tuna products because they believed "consumers would like to know if the tuna they purchase is falsely labeled as to the effect of the harvesting of the tuna on dolphins."[24] Pursuant to 16 U.S.C. Section 1385(d)(1), it is a violation of this act "for any producer, importer, exporter, distributor, or seller of any tuna product that is exported from or offered for sale in the United States to include on the label of that product the term 'dolphin safe' or any other term or symbol that falsely claims or suggests that the tuna contained in the product were harvested using a method of fishing that is not harmful to dolphins if the product contains tuna harvested on the high seas by a vessel engaged in driftnet fishing."[25]

20.     If the criteria set forth in § 1385(d) is satisfied, then Section 1385(d)(3)(A) of the DPCIA identifies the dolphin safe mark or label that must be used if that particular producer chooses to advertise their product as "dolphin safe" (*see* Exhibit 7 [U.S. Dept. of Commerce Official "dolphin safe" logo]). Section 1385(d)(3)(C) specifically states that no other mark or label, other than the one set forward by subparagraph A, should be used to communicate a product is dolphin safe, unless: (i) no dolphins were killed or seriously injured in the sets or other gear

---

[21] Lee R. Benaka, et al., U.S. National Bycatch Report First Edition Update 3, U.S. National Oceanic and Atmospheric Administration (February 2019).
[22] Amanda Keledjian, et al., Wasted Catch: Unsolved Problems in U.S. Fisheries, Oceana (2014), available at https://oceana.org/reports/wasted-catch-unsolved-problems-us-fisheries/.
[23] 16 U.S.C. § 1385(b)(1).
[24] 16 U.S.C. § 1385(b)(3).
[25] 16 U.S.C. Section 1385(d)(1).

CLARKSON LAW FIRM, P.C.
22525 Pacific Coast Highway
Malibu, CA 90265

deployments in which the tuna were caught; (ii) the label is supported by a tracking and

verification program which is comparable in effectiveness to the program established under

subsection (f); *and* (iii) the label complies with all applicable labeling, marketing, and advertising

laws and regulations of the Federal Trade Commission, including any guidelines for

environmental labeling."[26]

**Exhibit 7: U.S. Department of Commerce, Official "DOLPHIN SAFE" Logo.[27]**



21.     **FTC Labeling Regulations.** Section 5 of the FTC's Consumer Deception Act

prohibits "unfair or deceptive acts or practices in or affecting commerce."[28] Deceptive acts are any

practices where a "representation, omission, or practice misleads or is likely to mislead the

consumer, [a] consumer's interpretation of the representation, omission, or practice is considered

reasonable under the circumstances; and [t]he misleading representation, omission, or practice is

material."[29] Defendant's representation that its Product is "DOLPHIN SAFE" is misleading since

[26] 16 U.S.C. 1385(d)(3)(C).
[27] Dolphin-Safe Tuna Labeling; Official Mark, 65 Fed. Reg. 34408 (June 29, 2000).
[28] "Federal Trade Commission Act Section 5: Unfair or Deceptive Acts or Practices,"
https://www.federalreserve.gov/boarddocs/supmanual/cch/200806/ftca.pdf.
[29] *Id.*

CLARKSON LAW FIRM, P.C.
22525 Pacific Coast Highway
Malibu, CA 90265

13

CLARKSON LAW FIRM, P.C.
22525 Pacific Coast Highway
Malibu, CA 90265

1  Defendant uses fishing practices which kill and injure dolphins. Defendant is in violation of FTC

2  labeling regulations.

3      22.    Reasonable consumers, like Plaintiff, interpret the "DOLPHIN SAFE" label to mean

4  that no dolphins were killed, harmed, or injured in the manufacturing of the Product. Defendant

5  violates its "DOLPHIN SAFE" representations to Plaintiff and other reasonable consumers

6  because it uses tuna sourced via fishing methods that are known to kill and harm dolphins.

7  Defendant therefore takes advantage of consumers' desire to purchase products safe for dolphins

8  by falsely and deceptively using the "DOLPHIN SAFE" label for their Products.

9      23.    **Reasonable Consumers' Perception.** Based on the inclusion of the "DOLPHIN

10  SAFE" label, reasonable consumers believe that the Products are made using practices that do not

11  kill or injure dolphins. That means reasonable consumers believe that the Products do not contain

12  *any* tuna product harvested using fishing practices which kill or injure dolphins. This perception is

13  consistent with standard dictionary definitions, regulatory definitions, and the California

14  legislature's interpretation of environmental advertising claims.

15      a.  **Dictionary—Safe.** The Merriam-Webster standard dictionary defines "safe" as

16          "free from harm or risk."[30]

17      b.  **FTC Green Guides.** Notably, the FTC promulgated the Guides for the Use of

18          Environmental Marketing Claims, codified at 16 C.F.R. 260.1, *et seq.* ("**Green**

19          **Guides**"), to "help marketers avoid making environmental marketing claims that are

20          unfair or deceptive" based on the FTC's "views on how reasonable consumers likely

21          interpret [those] claims." *Id.* at § 260.1(a), (d). In its view, "[u]nqualified general

22          environmental benefit claims . . . likely convey that the product . . . has specific and

23          far-reaching environmental benefits and may convey that the item . . . has **no**

24          **negative environmental impact**." *Id.* at § 260.4(b) (providing "***Eco-Friendly***" as an

25          example) (emphasis added).

26      c.  **California Legislature.** The California legislature codified the Green Guides to

27          make it "unlawful for a person to make an untruthful, deceptive, or misleading

28

---

[30] *Safe*, MERRIAM-WEBSTER, https://www.merriam-webster.com/dictionary/safe

CLARKSON LAW FIRM, P.C.
22525 Pacific Coast Highway
Malibu, CA 90265

environmental claim, whether explicit or implied." Cal. Bus. & Prof. Code § 17580.5. California viewed terms "on the label or container of a consumer good" like "environmental choice," "*ecologically friendly*," "*earth friendly*," "*environmentally friendly*," "ecologically sound," "environmentally sound," "environmentally safe," "ecologically safe," "environmentally lite," "green product," "*or any other like term*," to mean that the product "*is not harmful to*, or is beneficial to, *the natural environment*." *Id.* at §§ 17580(a) (emphasis added); *see also id.* at § 17581 (criminalizing such deceptive labeling claims).

d. The Merriam-Webster standard dictionary defines "environment" as "the complex of physical, chemical, and biotic factors (such as climate, soil, and *living things*) that act upon an *organism* or an *ecological community* and ultimately determine its form and *survival.*" (emphasis added). As previously and subsequently outlined, this case concerns tuna fisheries' use of fishing methods that are known to kill or cause harm to dolphins. Dolphins are a vital part of the natural environment not only because they are living things but because they keep ecosystems in balance, disperse nutrients, and mix water in stratified oceans and rivers.[31] Thus, in labeling its products as "DOLPHIN SAFE" while simultaneously using longline and similarly harmful fishing methods to harvest its Products, Defendant is violating California law.

24. **Consumers Prefer and Seek Dolphin-Safe Tuna.** Today, "dolphin unsafe" tuna has been driven out of the market, with 98% of canned tuna being packaged with some sort of "DOLPHIN SAFE" labeling.[32] By that measure, the push for dolphin-safe fishing methods should be deemed a success. Unfortunately, however, "DOLPHIN SAFE" labels have less to do with conservation and more to do with advancing special interests.[33]

---

[31] Jeremy Kiszka, Matthew S. Woodstock, & Michael R. Heithaus, *Functional Roles and Ecological Importance of Small Cetaceans in Aquatic Ecosystems*, FRONTIERS (Feb. 25, 2022), https://www.frontiersin.org/articles/10.3389/fmars.2022.803173/full.

[32] K. William Watson, 'Dolphin Safe' Labels on Canned Tuna Are a Fraud, Forbes (April 29, 2015), available at https://www.forbes.com/sites/realspin/2015/04/29/dolphin-safe-labels-on-canned-tuna-are-a-fraud/?sh=17fca69e295e.

[33] *Id.*

25.     When presented with the option of choosing between "DOLPHIN SAFE" and dolphin unsafe tuna, American consumers overwhelmingly chose to purchase the former.[34] Studies on consumer behavior have found that dolphin safe labeling has, in fact, affected consumer behavior, and such labeling has contributed to an increase in the market share of canned tuna.[35] This research highlights the fact that Americans are willing to pay more in order to avoid personally contributing to the killing or harming of dolphins during tuna fishing. Consequently, manufacturers and distributors of "DOLPHIN SAFE" tuna, such as Costco, have taken advantage of this demand for ethically sourced tuna without ensuring consumer concerns are met. Defendant's false labeling and advertising creates consumer confusion about dolphin safe methods and labels.

26.     **Other Courts Have Deemed Claims Regarding Similar Product Labels to Be Actionable.** Defendant is not the first tuna supplier to engage in deceptive practices only to find itself embroiled in controversy. Some of the largest tuna suppliers in the world have already faced class action lawsuits claiming that they defrauded consumers by advertising their "DOLPHIN SAFE" fishing methods and sustainable practices.[36] For example, in *Gardner v. StarKist Co.*, 2020 U.S. Dist. LEXIS 56679 (N.D. Cal. 2020), the plaintiff brought suit against the defendant pursuant in part to Civil Code Section 1750, California's Consumers Legal Remedies Act ("CLRA"), for falsely labeling its tuna product as "DOLPHIN SAFE" despite employing fishing practices that either killed or harmed dolphins. This Court denied Starkist's Rule 12(b)(6) motion, ruling the product's dolphin safe claims misled reasonable consumers since defendant's fishing techniques were known to cause dolphin injuries and deaths.

///

///

---

[34] *Earth Island Inst. v. Hogarth*, 494 F.3d 757, 761 (9th Cir. 2007) (noting that as a result of consumer choice between dolphin-safe and dolphin-unsafe tuna products, "foreign sellers who did not adjust their fishing methods were quickly forced out of the market").

[35] *See* Mario F. Teisl, et al., Can Eco-Labels Tune a Market? Evidence from Dolphin-Safe Labeling, J. Environ. Econ. Manag., (2002).

[36] Rene Ebersole, *How 'Dolphin Safe' is Canned Tuna, Really?*, NATIONAL GEOGRAPHIC (Mar. 10, 2021), www.nationalgeographic.com/animals/article/how-dolphin-safe-is-canned-tuna#:~:text=The%20three%20largest%20U.S.%20tuna,and%20a%20commitment%20to%20sustainability.

CLASS ACTION COMPLAINT

CLARKSON LAW FIRM, P.C.
22525 Pacific Coast Highway
Malibu, CA 90265

**B.    Defendant's Products Are Not "DOLPHIN SAFE"**

27.    In an effort to convince consumers that its Products are not comprised of tuna harvested by methods known to kill or harm dolphins, Defendant prominently displays a "DOLPHIN SAFE" label on its Products' containers and advertises the Products as "DOLPHIN SAFE" on the Products' official website (*see* Exhibits 1-6). However, Defendant's "DOLPHIN SAFE" label is false and deceptive because the manufacturing of the Products involves unsafe fishing practices that are widely known to kill and harm dolphins and other marine life.

28.    Although Defendant makes no mention of the specific fisheries and corporations that it employs to catch the tuna used in the Products on its "Sustainable Fisheries" webpage,[37] in 2002, Defendant struck a deal with Bumble Bee Foods LLC ("Bumble Bee") to supply and manufacture Kirkland Signature tuna products, which include the Products.[38]

29.    Bumble Bee outlines its fishing practices on its website, where it admits to using longlines to harvest the albacore used in its tuna products. The longline fishing practices detailed on Bumble Bee's "Trace My Catch" webpage are similar to, if not exactly the same as, the longline fishing techniques outlined above: "[The] [P]roduct[s] [are] caught using longline fishing gear. Longline fishing is the best method for catching large, adult tuna that swim deeper in the water column, and is used to catch mature albacore, yellowfin, and bigeye tuna."[39] Defendant contracted with and continues to employ Bumble Bee as its supplier for its canned tuna products despite Bumble Bee's open and obvious use of unsafe and unfair fishing practices.

30.    In November 2019, Bumble Bee filed for Chapter 11 bankruptcy, with an agreement with Taiwan-based seafood producer, FCF Co. Ltd ("FCF"), to purchase the company's assets for roughly $925 million.[40]

31.    FCF is "one of the world's largest marine products integrated supply chain service provider companies specializing in tuna," with thirty subsidiaries and over fifty years of

---

[37] *Sustainable Fisheries*, Costco, https://www.costco.com/sustainability-fisheries.html
[38] Jon Gertner, *Fish Tale to Understand Costco, Look Inside a Can of its Premium Tuna*, CNN Money (Oct. 1, 2003), https://money.cnn.com/magazines/moneymag/moneymag_archive/2003/10/01/350564/index.html
[39] *Trace My Catch*, Bumble Bee, https://www.bumblebee.com/tracemycatch/results.
[40] Amelia, Lucas, *Bumble Bee Files for Bankruptcy*, CNBC (Nov. 22, 2019), https://www.cnbc.com/2019/11/22/bumble-bee-files-for-bankruptcy.html.

Clarkson Law Firm, P.C.
22525 Pacific Coast Highway
Malibu, CA 90265

Clarkson Law Firm, P.C.
22525 Pacific Coast Highway
Malibu, CA 90265

experience in trading and marketing tuna products.[41] There is no indication that the partnership between Bumble Bee and Defendant has been terminated since Bumble Bee became a subsidiary of FCF, or that FCF employs fishing practices that do not harm, injure, or kill dolphins. This is especially true considering that FCF is one of the world's largest tuna suppliers that harvests tuna on a massive scale.[42] Therefore, based on information and belief, Bumble Bee, by way of its parent company, FCF, is the supplier and manufacturer of all tuna products sold under the "Kirkland" brand name, which includes the Products.

32.    **The Products are Manufactured using Unsafe Fishing Practices Known To Kill and Harm Dolphins.** Despite Defendant labeling and advertising the Products as "DOLPHIN SAFE," the Products are harvested by way of unsafe fishing practices that can and do kill and cause harm to dolphins and other marine life. Defendant, by way of its suppliers, uses longline fishing methods to catch the tuna used to manufacture the Products.[43]

33.    In fact, in 2017, Greenpeace listed the Products among the bottom eight tuna brands based on sustainability and ethical concerns for ocean wildlife, indicating that Defendant uses longlines for the Products, a method that leads to bycatch causing serious injury or death to dolphins and other marine life.[44]

34.    Most recently, in 2021, Greenpeace listed Defendant Costco Wholesale Corporation among the bottom seven tuna brands based on sustainability and human rights concerns. Out of the sixteen major U.S. tuna retailers ranked by Greenpeace, Defendant ranked tenth and received a failing score in every available category, including the company's tuna procurement policy, traceability policies, and consumer education/labeling. Greenpeace concluded that such results were "extremely disappointing given [Defendant's] size and influence . . . ."[45]

---

[41] *Learn Who We Are*, FCF, https://fcf.com.tw/learn-who-we-are/.

[42] *2021 Tuna Retailer Scorecard: The High Cost of Cheap Tuna*, GREENPEACE (Dec. 2, 2021) https://www.greenpeace.org/usa/reports/2021-tuna-retailer-scorecard-the-high-cost-of-cheap-tuna/.

[43] *Why Bumble Bee Tuna Should Concern You (Hint: It's Human Rights and Destructive Fishing)*, GREENPEACE, (Mar. 19, 2020) https://www.greenpeace.org/usa/why-bumble-bee-tuna-should-concern-you-hint-its-human-rights-and-destructive-fishing/.

[44] Greenpeace, 2017 Tuna Shopping Guide, at https://www.greenpeace.org/usa/oceans/tuna-guide/.

[45] Josh Stride, The High Cost of Cheap Tuna: U.S. Supermarkets, Sustainability, and Human Rights at Sea, Greenpeace (2021), p. 32. https://www.greenpeace.org/usa/reports/2021-tuna-retailer-scorecard-the-high-cost-of-cheap-tuna/.

35.    **Longline Fishing.** The tuna in the Products is sourced by Defendant's suppliers using longline fishing—one of the most damaging fishing methods to dolphins and marine ecosystems. As much as thirteen percent of the world's tuna is caught using this method. Each day, longline fishing boats set out enough line to wrap the world five-hundred times.[46] Longline fishing involves casting out fishing lines that extend over sixty miles in length and contain thousands of hooks, which can ensnare birds, marine mammals, and juvenile fish. Longline fishing also requires "backbreaking, dangerous, and relentless work . . . ."[47]

36.    Longline fishing has had a significant harmful impact on marine life. For example, it is estimated that between 1994 and 2002, the Hawaiian pelagic longline fleet resulted in the deaths and serious injuries of forty-eight whales and dolphins per year.[48] In 2016, the Hawaii and American Samoa longline fisheries were considered responsible for injuring eighty-nine out of 101 mammals that interacted with fisheries in these locations.[49]

37.    Furthermore, fishing practices that harm dolphins are not limited to the Pacific Ocean. Marine conservation organizations estimate that between 6,000 and 10,000 dolphins are killed every year off the western coast of France.[50] Most of the dolphins caught during the hauling process usually die by the time they reach the fishing vessel; those that survive the initial catch are usually killed by the fishermen before being thrown overboard back into the sea.[51]

38.    In addition to the dangers posed by entanglement in fishing gear, *ingestion* of fishing gear is often lethal for cetaceans because it can damage the animals' interior organs. In a study of bottlenose dolphins, seven out of twelve ingestion cases lead to the death of the animal.[52]

39.    Furthermore, the economic costs associated with marine mammal depredation of longlines (fish removed from fishing gear by predators during hauling) have led fishermen to

---

[46] *Seaspiracy*, https://www.seaspiracy.org/.
[47] 2017 Tuna Shopping Guide, Greenpeace https://www.greenpeace.org/usa/oceans/tuna-guide/.
[48] Eric Gilman, Nigel Brothers, Geoff McPherson, & Paul Dalzell, A Review of Cetacean Interaction with Longline Gear, 8 J. CETACEAN RES. MANAGE. 215, 217 (2006).
[49] Aino Ruusuvuori, Fishery Related Injuries to Cetaceans off the Norwegian Coast (2007) (B.A. thesis, Halmstad University) (Semantic Scholar) http://hh.diva-portal.org/smash/get/diva2:1191646/FULLTEXT02.pdf.
[50] *About Operation Bycatch*, SEA SHEPHERD, https://www.seashepherdglobal.org/our-campaigns/dolphin-bycatch/learn-more/.
[51] *Id.*
[52] Ruusuvuori*, supra* note 49.

CLASS ACTION COMPLAINT

CLARKSON LAW FIRM, P.C.
22525 Pacific Coast Highway
Malibu, CA 90265

CLARKSON LAW FIRM, P.C.
22525 Pacific Coast Highway
Malibu, CA 90265

harass and kill dolphins by shooting them, using explosives, or otherwise employing harmful measures to avoid depredation and gear damage.[53] Besides the obvious dangers of serious injury and death that such practices impose on dolphin pods globally, they also have the potential to alter the distribution of dolphin populations, forcing them away from their usual feeding grounds and negatively impacting the fitness of entire pods (e.g., lowering the rates of successful reproduction and increasing the pods' susceptibility to diseases).[54]

40.    **Bycatch**. "Bycatch" refers to marine life unintentionally caught and often killed during commercial fishing for a different species. Marine mammals such as Risso's dolphins, bottlenose dolphins, and false killer whales are often entangled or hooked on longline gear and consequently injured or killed. Such injuries include, but are not limited to, lacerations, puncture wounds, exhaustion, and drowning.[55] The average bycatch rate for long lines, like those used by Defendant's suppliers, is more than twenty percent of the total catch.[56]

41.    Up to 40% of all fish caught worldwide are designated as "bycatch" and are subsequently killed or significantly injured before being returned to the water.[57]  Marine mammals such as dolphins and whales caught as bycatch are unable to surface for air, causing suffocation and painful death.[58] This troubling number of bycatch results in the death of roughly 300,000 dolphins and whales each year,[59] the vast majority of which are dolphins.[60]

42.    **Monofilament Lines and Circle Hooks.** Defendant claims that it uses "100% monofilament leaders & circle hooks" to catch the tuna used in the Products. Monofilament, or

---

[53] *Id.*

[54] *Id.*

[55] *Fishing Gear: Pelagic Longlines*, NOAA FISHERIES, https://www.fisheries.noaa.gov/national/bycatch/fishing-gear-pelagic-longlines#:~:text=Risks%20to%20Marine%20Mammals,-Marine%20mammals%20are&text=Risso's%20dolphins%2C%20bottlenose%20dolphins%2C%20and,wounds%2C%20exhaustion%2C%20and%20drowning.

[56] *Longline*, INTERNATIONAL SEAFOOD SUSTANABILITY FOUNDATION, https://www.iss-foundation.org/tuna-stocks-and-management/tuna-fishing/fishing-methods/longline/

[57] World Wildlife Foundation, Bycatch: A Sad Topic; Food and Agriculture Organization of the United Nations, A Third Assessment of Global Marine Fisheries Discards (2018); Dirk Zeller, et at., Global Marine Fisheries Discards: A Synthesis of Reconstructed Data, 19:1 Fish and Fisheries 30-39 (June 26, 2017).

[58] *Id.*

[59] World Wildlife Foundation, Catching Fish, Not Flukes and Flippers: A Global Effort to Reduce Whale and Dolphin Bycatch, https://wwf.panda.org/discover/knowledge_hub/endangered_species/cetaceans/threats/bycatch/?.

[60] Ebersole, *supra* note 36.

CLASS ACTION COMPLAINT

nylon, lines are widely used in the commercial fishing industry. Monofilament lines are commonly used for both the mainline (the longline) and branchlines (which hang off the main longline). Circle hooks are fishing hooks that are curved back into a circular shape, which decreases the likelihood that the hooks will be swallowed by fish and cetaceans alike. Although monofilament lines and circle hooks may reduce entanglements, their combined use cannot ensure that dolphins are not harmed or killed in the fishing process, thereby rendering Defendant's "DOLPHIN SAFE" Product representation false and misleading.[61, 62]

43.     **Lack of Transparency in Tracking Tuna.** Defendant's claim that the Products are "100% traceable from sea to shelf" is false and misleading. While Defendant allows consumers to trace the source of other Kirkland Brand seafood such as shrimp, there exists no program for consumers to trace the source of Kirkland Brand tuna on Defendant's website.[63] According to Greenpeace, "[Defendant] must improve monitoring, oversight, and conditions in valuable and risky tuna supply chains."[64]

44.     Defendant purports to use end-to-end traceability systems, such as TruTrace—a cloud-based blockchain software—to understand the connection between the seafood it sells and the people and places that help produce it.[65] However, Defendant makes no effort to actually foster transparency regarding its tuna suppliers with its customers, as no other information is detailed on its website and any data collected by TruTrace is accessible on its platform only by Defendant itself.[66]

45.     Defendant's suppliers also fail to keep accurate records of their effects on cetaceans and marine life. For example, in its 2022 Impact and Sustainability Report, Bumble Bee claims to have partnered with the Global Dialogue on Seafood Sustainability ("GDST"), an international,

---

[61] *Dolphin-Friendly Fishing 7 Viewing Tips*, SARASOTA DOLPHIN RESEARCH PROGRAM, https://sarasotadolphin.org/wp-content/uploads/2020/09/Dolphin-Friendly-Tips-1.pdf.
[62] *Bottlenose Dolphins – Increase in Depredatory (Stealing) Behavior and Deaths Associated with Recreational Fishing Gear*, NOAA (Oct. 2006), https://nmssanctuaries.blob.core.windows.net/sanctuaries-prod/media/archive/dolphinsmart/pdfs/dolphin_dep.pdf.
[63] Costco Wholesale Corporation, Sustainable Fisheries & Aquaculture, https://www.costco.com/sustainability-fisheries.html.
[64] Stride, *supra* note 45.
[65] *Sustainable Fisheries*, COSTCO, https://www.costco.com/sustainability-fisheries.html
[66] *Pricing*, TRUETRACE, https://trutrace.co/pricing-trutrace/.

CLARKSON LAW FIRM, P.C.
22525 Pacific Coast Highway
Malibu, CA 90265

21

business-to-business platform that established the first ever global industry standards for seafood traceability, to improve its sustainable seafood assessments and claims.[67] However, the GDST does not currently have a mechanism to independently verify the validity of claims made by tuna fisheries pertaining to their compliance with and implementation of GDST standards.[68]

46.    Similarly, FCF ranks in the bottom fifty percent of all companies included in the Seafood Stewardship Index, which measures "how the world's leading seafood companies contribute to the sustainable management of our oceans and coastal ecosystems, as well as how they help ensure responsible social practices are implemented across all stages of the supply chain." Specifically, FCF's auditing system lacks transparency and a company-wide approach. Furthermore, the company's focus on obtaining third-party certifications makes it difficult to assess the company's efforts and impact on the ecosystems it profits from.[69]

47.    **Many Oversight Organizations Are Funded By and Partner with Destructive Fisheries.** Defendant and its supplier, Bumble Bee, both claim to be participants in the International Seafood Sustainability Foundation (ISSF), with Bumble Bee serving as one of the foundation's founders. The ISSF is a partnership among global scientists, tuna processors, and the World Wildlife Fund ("WWF"), with the aim to "undertake science-based initiatives for the long-term sustainability of tuna stocks, reduction of by-catch and promotion of ecosystem health."[70] Although the ISSF claims to be committed to long-term conservation and sustainable use of global tuna fisheries, as noted by Greenpeace, the ISSF is actually "nothing more than a front for giant tuna companies."[71]

---

[67] *Seafood Future*, BUMBLE BEE, https://issuu.com/marketing-bumblebee/docs/bumble_bee_seafood_future_report_2022_draft.v13?fr=sZTRkODUwNjE4ODc.
[68] *GDST Standards and Materials*, GLOBAL DIALOGUE ON SEAFOOD TRACEABILITY, https://traceability-dialogue.org/what-is-the-global-dialogue/.
[69] *FCF Co. Ltd.*, WORLD BENCHMARK ALLIANCE, https://www.worldbenchmarkingalliance.org/publication/seafood-stewardship-index/companies/fcf-co/.
[70] *Tuna 101*, BUMBLE BEE, https://www.bumblebee.com/seafood-school/tuna-101/#:~:text=The%20ISSF%20mission%20is%20to,Organizations%20(RFMO)%20scientific%20committees.
[71] *How the International Seafood Sustainability Foundation (ISSF) Environmental Action*, GREENPEACE. https://www.greenpeace.org/usa/oceans/sustainable-seafood/how-international-seafood-sustainability-foundation-blocks-environmental-action/.

CLARKSON LAW FIRM, P.C.
22525 Pacific Coast Highway
Malibu, CA 90265

48.     The ISSF was founded in 2009, a time when environmental organizations and consumers alike were putting more pressure on the tuna industry to change its destructive practices. The eight founding members of the ISSF, which included Bumble Bee, were all "tuna industry giants," who, at the time of the foundation's finding, controlled fifty percent of the global tuna market between them. Since its founding, ISSF has consistently been funded by the corporations that it claims to oversee, receiving hundreds of thousands of dollars in donations from Bumble Bee and other tuna fisheries.[72]

49.     Despite its ISSF membership, Defendant's use of longlines and other well-known, dolphin-harming techniques, showing that either the ISSF's stated mission and objectives are false or misleading and/or Defendant and Bumble Bee's sustainability representations are false or misleading.

50.     Defendant further alleges its commitment to sustainable fishing practices by touting its role as one of the founding members of the Seafood Task Force ("STF") — formerly the "Shrimp Sustainable Supply Chain Task Force" — a multi-stakeholder alliance between American and European tuna retailers with the goal of addressing sustainability issues. Although the STF claims to champion sustainable fishing practices, none of the organization's documents published on its webpage cite to sustainable fishing practices by way of name or description. In fact, the only procedures referenced in the documents on its "Resources" webpage pertain to work conditions and employment practices.[73]

51.     Bumble Bee's parent company, FCF, likewise touts its compliance with industry standards and practices that appear concerned with sustainability but are instead created purely to deflect criticism from tuna fisheries that carry out unsafe fishing practices. On its "Tuna Sustainability Policy," FCF claims to "support sustainable fishing methods" by promoting and providing seafood products from Marine Stewardship Council ("MSC") certified seafood fisheries.[74]

---

[72] *Id.*
[73] *See Resources*, Seafood Task Force, https://www.seafoodtaskforce.global/resources/.
[74] *Tuna Sustainability Policy*, FCF (Apr. 26, 2021), https://fcf.com.tw/wp-content/uploads/2021/12/1-FCF-Tuna-Sustainability-Policy_v3.1-FCF-T-R-E-001.pdf.

CLARKSON LAW FIRM, P.C.
22525 Pacific Coast Highway
Malibu, CA 90265

52.     The Marine Stewardship Council is a non-profit organization that aims to set standards for sustainable fishing. Although the MSC purports that their blue fish label provides an "assurance" that the seafood product "came from a certified sustainable fishery,"[75] there is growing concern among industry watchdogs that the bar for MSC approval has been dropped to low: "critics suggest the [MSC acceptance] bar has been dropped unacceptably low in order to satisfy ever-growing market demand by getting more (generally large industrial) fisheries into the program . . . [c]oncerns around lowering of the bar have resulted in several objections to recent fishery certifications and in published critiques of the MSC's Standard and its application."[76]

53.     Defendant's "DOLPHIN SAFE" label is also deceptive because large-scale tuna fisheries—like those that work with Defendant—cannot catch all their tuna using the pole and line method for instance, which is a sustainable and safe fishing practice that entails catching fish one at a time. [77,78,79] Yet, Defendant promises "DOLPHIN SAFE" tuna while simultaneously employing fishing methods that are widely known to kill and harm dolphins.

54.     **Defendant's Kirkland Tuna "DOLPHIN SAFE" Logo is False and Deceptive.** Defendant's "DOLPHIN SAFE" label is not the official label set forth by the U.S. Department of Commerce (*see* Exhibit 8 [Defendant's "DOLPHIN SAFE" mark]). As set forth in the Product images *supra*, Defendant's "DOLPHIN SAFE" representation is one of a few select claims that Defendant deliberately emphasizes on the front labels in order to represent the Products as safe for dolphins (*see* Exhibits 1-6).

---

[75] *Learn More*, MARINE STEWARDSHIP COUNCIL, https://www.msc.org/en-us?gclid=CjwKCAjwiJqWBhBdEiwAtESPaJ8EaNNatf0Rvn3DjAXptZNtUrLRsGScWsFCmKpEMUMXwk0qg5CIwRoCLpwQAvD_BwE.

[76] Amy Hammond & Callum Roberts, *Why The Marine Stewardship Council Needs an Independent Review*, ETHICAL CONSUMER (July 26, 2021), https://fcf.com.tw/wp-content/uploads/2021/12/1-FCF-Tuna-Sustainability-Policy_v3.1-FCF-T-R-E-001.pdf.

[77] Katherine Sullivan, '*Seaspiracy*' *Dives Deep Into 'Bycatch' and 'Dolphin-Safe' Tuna Scandals*, PETA BLOG (Mar. 26, 2021), https://www.peta.org/blog/seaspiracy-what-is-bycatch-is-dolphin-safe-tuna-really-safe/.

[78] Alex Renton, *Time to Change Your Tuna?*, THE GUARDIAN (Aug. 18, 2008), https://www.theguardian.com/lifeandstyle/wordofmouth/2008/aug/18/greenpeacejohnwesttunatinne#:~:text=If%20you%20really%20want%20to,to%20the%20different%20fishing%20methods).

[79] Kameron Schroeder, *Dolphin Safe Tuna: The Illusion of a Feel-Good Conservation Story*, DUKE (Apr. 19, 2017), https://sites.nicholas.duke.edu/statsreview/dolphin-safe-tuna-the-illusion-of-a-feel-good-conservation-story/.

CLARKSON LAW FIRM, P.C.
22525 Pacific Coast Highway
Malibu, CA 90265

CLARKSON LAW FIRM, P.C.
22525 Pacific Coast Highway
Malibu, CA 90265



55.     Defendant is only able to use a dolphin safe mark or label other than the official mark if it can satisfy the three conditions set forth in Section 1385(d)(3)(C). Defendant cannot satisfy these factors because (1) it uses unsafe fishing practices that kill and injure dolphins, (2) its label is not supported by an effective tracking and verification program, and (3) its label does not comply with all applicable labeling, marketing, and advertising laws and regulations of the FTC.

**C.      Defendant Misled Plaintiff and Other Reasonable Consumers Who Relied on the Material and False "DOLPHIN SAFE" Claim to Their Detriment**

56.     **Material.** The false advertising claims were and are material to reasonable consumers, including Plaintiff, in deciding to purchase the Products.

57.     **Reliance.** Plaintiff and reasonable consumers relied and rely on Defendant's false labeling and advertising claims that the Products are "DOLPHIN SAFE" in making the decision to purchase the Products.

58.     **Consumers Lack Knowledge of Falsity.** At the time Plaintiff and reasonable consumers purchased the Products, they did not know, and had no reason to know, that the

CLASS ACTION COMPLAINT

Products' "DOLPHIN SAFE" advertising claims on the label and packaging were, in fact, false, misleading, deceptive, and unlawful as set forth herein.

59.    **Misrepresentation/Omission.** The "DOLPHIN SAFE" representations materially misrepresented the Products were manufactured using fishing practices that do not kill or injure dolphins, and Defendant failed to adequately inform reasonable consumers, including Plaintiff, that the Products were not in fact dolphin safe given the fishing methods used to source the tuna.

60.    **Defendant's Knowledge.** Defendant knew, or should have known, that the "DOLPHIN SAFE" representation was false, misleading, deceptive, and unlawful, at the time that it advertised the Products using the "DOLPHIN SAFE" representations, and Defendant intentionally and deliberately used the "DOLPHIN SAFE" representations on the Products' labeling, packaging, and advertising to cause Plaintiff and similarly situated consumers to believe that the Products are made using fair and sustainable fishing practices that do not kill or cause harm to dolphins. The conspicuousness of the challenged representation on the Products' labels and repeated use of the challenged representation in advertisements demonstrate Defendant's awareness of the materiality of said representations and understanding that consumers prefer and are motivated to buy tuna products that contain tuna harvested by methods that do not harm dolphins. Generally, manufacturers and marketers repeat marketing messages to emphasize and characterize a brand or product line. Similarly, they reserve the front primary display panel of labels on consumer products of similar dimensions for the most important and persuasive information that they believe will motivate consumers to buy the products. Defendant, as the manufacturer, manufactured the Products using harmful fishing practices. Defendant, as the manufacturer, had exclusive control over the "DOLPHIN SAFE" label inclusion on the Products' labels and in their advertisements. Defendant is and was, at all times, statutorily required to ensure the manufacturing of its Products did not in fact harm, injure, or kill any dolphins in order to be "DOLPHIN SAFE." Thus, Defendant knew, or should have known, at all relevant times, that the "DOLPHIN SAFE" label was and is false and deceptive. Defendant further knew that reasonable consumers, including Plaintiff, were and are misled into buying the Products based on the mistaken belief that the challenged "DOLPHIN SAFE" representation is true.

CLARKSON LAW FIRM, P.C.
22525 Pacific Coast Highway
Malibu, CA 90265

61.  **Detriment.** Plaintiff and reasonable consumers would not have purchased the Products, or would have purchased the Products on different terms, if they had known the truth— that the "DOLPHIN SAFE" representations are false, and the Products are sourced using fishing methods that kill and injure dolphins. Accordingly, based on Defendant's material misrepresentations, reasonable consumers, including Plaintiff, purchased the Products to their detriment.

**D.    No Adequate Remedy at Law.**

62.  **No Adequate Remedy at Law.** Plaintiff and members of the Class are entitled to equitable relief as no adequate remedy at law exists.

   a.  **Broader Statutes of Limitations.** The statutes of limitations for the causes of action pled herein vary. The limitations period is four years for claims brought under the UCL, which is one year longer than the statutes of limitations under the FAL and CLRA. In addition, the statutes of limitations vary for certain states' laws for breach of warranty and unjust enrichment/restitution, between approximately 2 to 6 years. Thus, California Subclass members who purchased the Products more than 3 years prior to the filing of the complaint will be barred from recovery if equitable relief were not permitted under the UCL.  Similarly, Nationwide Class members who purchased the Products prior to the furthest reach-back under the statute of limitations for breach of warranty, will be barred from recovery if equitable relief were not permitted for restitution/unjust enrichment.

   b.  **Broader Scope of Conduct.** In addition, the scope of actionable misconduct under the unfair prong of the UCL is broader than the other causes of action asserted herein.  It includes, for example, Defendant's overall unfair marketing scheme to promote and brand the Products with the Challenged Representation ("DOLPHIN SAFE"), across a multitude of media platforms, including the Products' labels and packaging, over a long period of time, in order to gain an unfair advantage over competitor products and to take advantage of consumers' desire for products that comport with the Challenged Representation. The UCL also creates a cause of

CLARKSON LAW FIRM, P.C.
22525 Pacific Coast Highway
Malibu, CA 90265

action for violations of law (such as statutory or regulatory requirements related to representations and omissions made on the type of products at issue).  Thus, Plaintiff and Class members may be entitled to restitution under the UCL, while not entitled to damages under other causes of action asserted herein (e.g., the FAL requires actual or constructive knowledge of the falsity; the CLRA is limited to certain types of plaintiffs (an individual who seeks or acquires, by purchase or lease, any goods or services for personal, family, or household purposes) and other statutorily enumerated conduct).  Similarly, unjust enrichment/restitution is broader than breach of warranty.  For example, in some states, breach of warranty may require privity of contract or pre-lawsuit notice, which are not typically required to establish unjust enrichment/restitution.  Thus, Plaintiff and Class members may be entitled to recover under unjust enrichment/restitution, while not entitled to damages under breach of warranty, because they purchased the products from third-party retailers or provide adequate pre-lawsuit notice prior to the commencement of this action.

c. **Injunctive Relief to Cease Misconduct and Dispel Misperception.** Injunctive relief is appropriate on behalf of Plaintiff and members of the Class because Defendant continues to misrepresent the Products with the Challenged Representation. Injunctive relief is necessary to prevent Defendant from continuing to engage in the unfair, fraudulent, and/or unlawful conduct described herein and to prevent future harm—none of which can be achieved through available legal remedies (such as monetary damages to compensate past harm). Further, injunctive relief, in the form of affirmative disclosures is necessary to dispel the public misperception about the Products that has resulted from years of Defendant's unfair, fraudulent, and unlawful marketing efforts.  Such disclosures would include, but are not limited to, publicly disseminated statements that the Products Challenged Representation is not true and providing accurate information about the Products' true nature; and/or requiring prominent qualifications and/or disclaimers on the Products' front label concerning the Products' true nature.  An injunction requiring

CLARKSON LAW FIRM, P.C.
22525 Pacific Coast Highway
Malibu, CA 90265

affirmative disclosures to dispel the public's misperception and prevent the ongoing deception and repeat purchases based thereon, is also not available through a legal remedy (such as monetary damages). In addition, Plaintiff is unable at present to accurately quantify the damages caused by Defendant's future harm, rendering injunctive relief all the more necessary. For example, because the court has not yet certified any class, the following remains unknown: the scope of the class, the identities of its members, their respective purchasing practices, prices of future Product sales, and quantities of future Product sales.

d. **Public Injunction.** Further, because a "public injunction" is available under the UCL, damages will not adequately "benefit the general public" in a manner equivalent to an injunction.

e. **California vs. Nationwide Class Claims**. Violation of the UCL, FAL, and CLRA are claims asserted on behalf of Plaintiff and the California Subclass against non-California Defendant, while breach of warranty and unjust enrichment/restitution are asserted on behalf of Plaintiff and the Nationwide Class. Dismissal of farther-reaching claims would bar recovery for non-California members of the Class.

f. **Procedural Posture—Incomplete Discovery & Pre-Certification.** Lastly, this is the first pleading in this action and discovery has not yet commenced and/or is at its initial stages. No class has been certified yet. The completion of fact/non-expert and expert discovery, as well as the certification of this case as a class action, are necessary to finalize and determine all available and unavailable remedies, including legal and equitable, for Plaintiff's individual claims and any certified class or subclass. Plaintiff therefore reserves her right to amend this complaint and/or assert additional facts that demonstrate this Court's jurisdiction to order equitable remedies where no adequate legal remedies exist for either Plaintiff and/or any certified class or subclass. Such proof, to the extent necessary, will be presented prior to the trial of any equitable claims for relief and/or the entry of an order granting equitable relief.

63.     Plaintiff does not seek to impose additional or conflicting labeling, testing, or warning requirements as it relates to the "DOLPHIN SAFE" claim; rather, Plaintiff seeks to cure Defendant's deceptive labeling of the Products as "DOLPHIN SAFE," which is not mandated by the FDA. *See* 16 U.S.C. § 1385 (no provisions requiring the inclusion of a "DOLPHIN SAFE" label claim on tuna products). Congress or the FDA have not promulgated regulations *requiring* environmental claims such as "DOLPHIN SAFE" on canned tuna products, let alone one that would conflict with enjoining Defendant's misleading use of this claim. As such, Plaintiff is not seeking to impose labeling requirements that differ from any established by Congress or the FDA.

## CLASS ALLEGATIONS

64.     **Class Definition.** Plaintiff brings this action as a class action pursuant to Federal Rules of Civil Procedure 23(b)(2) and 23(b)(3) on behalf of herself and all others similarly situated, and as members of the Classes defined as follows:

> All residents of the United States who, within the applicable statute of limitations periods, purchased the Products ("Nationwide Class"); and
>
> All residents of California who, within four years prior to the filing of this Complaint, purchased the Products ("California Subclass").
>
> ("Nationwide Class" and "California Subclass," collectively, "Class").

65.     **Class Definition Exclusions.** Excluded from the Class are: (i) Defendant, its assigns, successors, and legal representatives; (ii) any entities in which Defendant has controlling interests; (iii) federal, state, and/or local governments, including, but not limited to, their departments, agencies, divisions, bureaus, boards, sections, groups, counsels, and/or subdivisions; (iv) all persons presently in bankruptcy proceedings or who obtained a bankruptcy discharge in the last three years; and (v) any judicial officer presiding over this matter and person within the third degree of consanguinity to such judicial officer.

66.     **Reservation of Rights to Amend Class Definition.** Plaintiff reserves the right to amend or otherwise alter the class definitions presented to the Court at the appropriate time in response to facts learned through discovery, legal arguments advanced by Defendant, or otherwise.

CLARKSON LAW FIRM, P.C.
22525 Pacific Coast Highway
Malibu, CA 90265

CLARKSON LAW FIRM, P.C.
22525 Pacific Coast Highway
Malibu, CA 90265

67.   This action is properly maintainable as a class action pursuant to Federal Rule of Civil Procedure 23 for the reasons set forth below.

68.   **Numerosity:** Members of the Class are so numerous that individual joinder is impracticable. On information and belief, the Class consists of tens of thousands of purchasers (if not more) dispersed throughout California and the United States.  Accordingly, it would be impracticable to join all members of the Class before the Court.

69.   The precise number of Class members and their identities are unknown to Plaintiff at this time but may be determined through discovery.  Class members may be notified of the pendency of this action by mail and/or publication through the distribution records of Defendant and third-party retailers and vendors.

70.   **Common Questions Predominate:** There are numerous and substantial questions of law or fact common to all members of the Class that predominate over any individual issues. Included within the common questions of law or fact are:

a.   Whether Defendant's conduct constitutes an unfair method of competition or unfair or deceptive act or practice in violation of California Civil Code Section 1750, *et seq.*;

b.   Whether Defendant used deceptive representations in connection with the sale of the Products in violation of California Civil Code Section 1750, *et seq.*;

c.   Whether Defendant represented the Products have characteristics that they do not have in violation of California Civil Code Section 1750, *et seq.*;

d.   Whether Defendant advertised the Products with the intent not to sell them as advertised in violation of California Civil Code Section 1750, *et seq.*;

e.   Whether Defendant's advertising is untrue or misleading within the meaning of Business and Professions Code Section 17500, *et seq.*;

f.   Whether Defendant knew or by the exercise of reasonable care should have known its advertising was and is untrue or misleading in violation of Business and Professions Code Section 17500, *et seq.*;

CLARKSON LAW FIRM, P.C.
22525 Pacific Coast Highway
Malibu, CA 90265

g. Whether Defendant made false and misleading representations in its advertising and labeling of the Products in violation of Business and Professions Code Section 17500, *et seq.*;

h. Whether Defendant's conduct is an unfair business act or practice within the meaning of Business and Professions Code Section 17200, *et seq.*;

i. Whether Defendant's conduct is a fraudulent business act or practice within the meaning of Business and Professions Code Section 17200, *et seq.*;

j. Whether Defendant's conduct is an unlawful business act or practice within the meaning of Business and Professions Code Section 17200, *et seq.*;

k. Whether Defendant's conduct constitutes a breach of express warranty;

l. Whether Defendant's conduct constitutes a breach of implied warranty;

m. Whether Defendant was unjustly enriched by its deceptive conduct;

n. Whether Plaintiff and the Class paid more money or a premium amount for the Products than they actually received; and

o. How much more money or premium amount Plaintiff and the Class paid for the Products than they actually received?

71. **Typicality**: Plaintiff's claims are typical of the claims of the Class Members she seeks to represent because Plaintiff, like the Class Members, purchased Defendant's misleading and deceptive Product. Defendant's unlawful, unfair and/or fraudulent actions concern the same business practices described herein irrespective of where they occurred or were experienced. Plaintiff and the Class sustained similar injuries arising out of Defendant's conduct. Plaintiff's and Class Members' claims arise from the same practices and course of conduct and are based on the same legal theories.

72. **Adequacy**: Plaintiff is an adequate representative of the Class she seeks to represent because her interests do not conflict with the interests of the Class Members Plaintiff seeks to represent. Plaintiff will fairly and adequately protect Class Members' interests and has retained counsel experienced and competent in the prosecution of complex class actions, including complex questions that arise in consumer protection litigation.

CLARKSON LAW FIRM, P.C.
22525 Pacific Coast Highway
Malibu, CA 90265

73.   **Superiority and Substantial Benefit**: A class action is superior to other available methods for fair and efficient adjudication of this controversy. The expense and burden of individual litigation would make it impracticable or impossible for the Class to prosecute their claims individually. A class action would be more efficient and manageable for at least the following reasons:

a.   The claims presented in this case predominate over any questions of law or fact, if any exist at all, affecting any individual member of the Class;

b.   Absent a Class, the members of the Class will continue to suffer damage and Defendant's unlawful conduct will continue without remedy while Defendant profits from and enjoys their ill-gotten gains;

c.   Given the size of individual Class Members' claims, few, if any, Class Members could afford to or would seek legal redress individually for the wrongs Defendant committed against them, and absent Class Members have no substantial interest in individually controlling the prosecution of individual actions;

d.   When the liability of Defendant has been adjudicated, claims of all members of the Class can be administered efficiently and/or determined uniformly by the Court; and

e.   This action presents no difficulty that would impede their management by the Court as a class action, which is the best available means by which Plaintiff and Class Members can seek redress for the harm caused to them by Defendant.

74.   **Inconsistent Rulings.** Because Plaintiff seeks relief for all members of the Class, the prosecution of separate actions by individual members would create a risk of inconsistent or varying adjudications with respect to individual members of the Class, which would establish incompatible standards of conduct for Defendant.

75.   **Injunctive/Equitable Relief.** The prerequisites to maintaining a class action for injunctive or equitable relief pursuant to Fed. R. Civ. P. 23(b)(2) are met as Defendant has acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive or equitable relief with respect to the Class as a whole.

///

76. **Manageability.** The trial and litigation of Plaintiff's claims are manageable. Plaintiff and Plaintiff's counsel are unaware of any difficulties that are likely to be encountered in the management of this action that would preclude its maintenance as a class action.

77. Individual litigation of the legal and factual issues raised by Defendant's conduct would increase delay and expense to all parties and the court system. The class action device presents far fewer management difficulties and provides the benefits of a single, uniform adjudication, economics of scale, and comprehensive supervision by a single court.

## <u>COUNT ONE</u>

### Violation of California Consumers Legal Remedies Act,

### California Civil Code 1750, *et seq.*

### *(Brought on behalf of the California Subclass)*

78. Plaintiff repeats and re-alleges the allegations of the previous paragraphs and incorporates the same as if set forth herein at length.

79. Plaintiff brings this cause of action pursuant to Civil Code Section 1750, *et seq.*, the Consumers Legal Remedies Act ("CLRA"), on her own behalf and on behalf of all other persons similarly situated. Plaintiff seeks to represent as defined in Paragraphs 64-65.

80. The Class consists of thousands of persons, the joinder of whom is impracticable.

81. There are questions of law and fact common to the Class, which questions are substantially similar and predominate over questions affecting the individual Class members, as set forth hereinabove.

82. The CLRA prohibits certain "unfair methods of competition and unfair or deceptive acts or practices" in connection with the sale of goods.

83. The practices described herein, specifically Defendant's packaging, advertising, and sale of the Products, were intended to result and did result in the sale of the Products to the consuming public and violated and continue to violate the CLRA by (1) using deceptive representations in connection with the Products; and (2) advertising, labeling, and packaging the Products with intent not to sell them as advertised.

///

CLARKSON LAW FIRM, P.C.
22525 Pacific Coast Highway
Malibu, CA 90265

CLARKSON LAW FIRM, P.C.
22525 Pacific Coast Highway
Malibu, CA 90265

84. Defendant fraudulently deceived Plaintiff and the Class by misrepresenting the Products as having characteristics which they do not have, e.g., labeling and advertising the Products as being "DOLPHIN SAFE." In doing so, Defendant intentionally misrepresented and concealed material facts from Plaintiff and the Class. Said misrepresentations and concealment were done with the intention of deceiving Plaintiff and the Class and depriving them of their legal rights and money.

85. Defendant knew or should have known, through the exercise of reasonable care, that the Products' labeling and advertising were misleading.

86. Defendant's actions as described herein were done with conscious disregard of Plaintiff's rights, and Defendant was wanton and malicious in its concealment of the same.

87. Defendant's labeling and advertising of the Products were material factors in Plaintiff's decision to purchase the Products. Based on Defendant's labeling and advertising of the Products, Plaintiff reasonably believed that she was purchasing Products that were manufactured using methods that were safe for dolphins. In actuality, the Products were manufactured using methods that kill and injure dolphins, not using methods that were safe for dolphins. Had she known the truth of the matter, Plaintiff would not have purchased the Product.

88. Plaintiff and the Class have suffered injury in fact and have lost money as a result of Defendant's unfair, unlawful, and fraudulent conduct. Specifically, Plaintiff and the Class paid for Products that were different from what they were reasonably expecting when they decided to make their respective purchases. Plaintiff and the Class would not have purchased the Products had they known the claims were false.

89. Defendant's false and misleading labeling and advertising should be enjoined due to its false, misleading and/or deceptive nature.

90. By letter dated November 12, 2021, Plaintiff advised Defendant of its false and misleading claims pursuant to California Civil Code Section 1782(a).

91. Pursuant to Section 1780(a) of the Act, Plaintiff seeks injunctive relief in the form of an order enjoining the above-described wrongful acts and practices of Defendant, including, but

1    not limited to, an order enjoining Defendant from continuing to make the label and advertising

2    claim challenged herein.

3         92.    Plaintiff shall be irreparably harmed if such an order is not granted. Plaintiff also

4    seeks restitution.

5                                    **COUNT TWO**

6                    **Violation of California False Advertising Law,**

7                   **Business & Professions Code 17500, *et seq*.**

8                   ***(Brought on behalf of the California Subclass)***

9         93.    Plaintiff repeats and re-alleges the allegations set forth in the preceding paragraphs

10   and incorporates the same as if set forth herein at length.

11        94.    Plaintiff brings this cause of action pursuant to Business and Professions Code

12   Section 17500, *et seq*., individually and on behalf of the Class. Plaintiff

13        95.    California's False Advertising Law, California Business and Profession Code

14   Section 17500, *et seq*., makes it "unlawful for any person to make or disseminate or cause to be

15   made or disseminated before the public in this state, in any advertising device or in any other

16   manner or means whatever, including over the Internet, any statement, concerning personal

17   property or services, professional or otherwise, or performance or disposition thereof, which is

18   untrue or misleading and which is known, or which by the exercise of reasonable care should be

19   known, to be untrue or misleading."

20        96.    Defendant knowingly spread misleading claims regarding the Products as a means to

21   mislead the public that the Products are manufactured in a manner that is safe for dolphins.

22        97.    Defendant controlled the labeling, packaging, production, and advertising of the

23   Products. Defendant knew or should have known, through the exercise of reasonable care, that its

24   "DOLPHIN SAFE" representations and omissions about the Products were untrue, deceptive, and

25   misleading.

26        98.    Defendant's actions of advertising and displaying misleading claims and falsely

27   labeling the Products "DOLPHIN SAFE" in prominent type face on each Product label are highly

28   likely to deceive consumers in regard to the actual nature of these products.

CLARKSON LAW FIRM, P.C.
22525 Pacific Coast Highway
Malibu, CA 90265

99.    Defendant's actions in violation of Section 17500 were false and misleading such that the general public is and was likely to be deceived.

100.    Pursuant to Business & Professions Code Section 17535, Plaintiff and the Class seek an order of this Court enjoining Defendant from continuing to engage, use, or employ its unlawful business practice. Likewise, Plaintiff and the Class seek an order requiring Defendant to disclose such misrepresentations, and additionally request an order awarding Plaintiff and the Class restitution of the money wrongfully acquired by Defendant in amount to be determined by trial.

101.    Plaintiff and the Class have suffered injury in fact and have lost money as a result of Defendant's false representations. Plaintiff and the Class purchased the Products in reliance upon the claims by Defendant that the Products were "DOLPHIN SAFE." Plaintiff would not have purchased the Products if she had known that the claims and advertising as described herein were false.

### COUNT THREE

**Violation of California Unfair Competition Law,**

**Business & Professions Code Section 17200, *et seq.***

***(Brought on behalf of the California Subclass)***

102.    Plaintiff repeats and re-alleges the allegations set forth above and incorporates the same as if set forth herein at length.

103.    Plaintiff brings this cause of action pursuant to Business and Professions Code Section 17200, *et seq.*, on their own behalf and on behalf of the Class. Plaintiff

104.    The UCL prohibits "any unlawful, unfair... or fraudulent business act or practice." Cal. Bus & Prof. Code § 17200.

### A.  "Unfair" Prong

105.    Under California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200, *et. seq.*, a challenged activity is "unfair" when "any injury it causes outweighs any benefits provided to consumers and the injury is one that the consumers themselves could not reasonably avoid." *Camacho v. Auto Club of Southern California,* 142 Cal. App. 4th 1394, 1403 (2006).

///

CLARKSON LAW FIRM, P.C.
22525 Pacific Coast Highway
Malibu, CA 90265

106.   Defendant's actions of advertising and labeling the Products as being "DOLPHIN SAFE" are false, misleading, and deceptive.

107.   Defendant's actions of falsely advertising its Products as "DOLPHIN SAFE" cause injuries to consumers.

108.   Through false, misleading, and deceptive advertising and labeling of the Products, Defendant seeks to take advantage of consumer's desires for products that are dolphin safe, while reaping the financial benefits of manufacturing the Products in manner that kills and injures dolphins.

109.   When Defendant claims that the Products are "DOLPHIN SAFE," it provides false promises to consumers, which reduces consumer choice. This also increases the cost to consumers because the unfair business practice allows Defendant to produce the Products more inexpensively, which in turn, stifles competition in the marketplace of manufacturers who incur additional costs in manufacturing a competing product that is truthfully advertised as "DOLPHIN SAFE" because it is sourced from tuna caught using fishing methods which do not kill or injure dolphins.

110.   Consumers cannot avoid any of the injuries caused by Defendant's false and misleading advertising of the Products.

111.   Some courts conduct a balancing test to decide if a challenged activity amounts to unfair conduct under California Business and Professions Code Section 17200. In doing so, the courts "weigh the utility of the Defendant's conduct against the gravity of the harm alleged to the victim." *Davis v. HSBC Bank Nevada, N.A.,* 691 F. 3d 1152, 1169 (9th Cir. 2012).

112.   Defendant's false promise results in financial harm to consumers. Thus, the utility of Defendant's conduct is vastly outweighed by the gravity of its harm.

113.   Some courts require the "unfairness must be tethered to some legislative declared policy or proof of some actual or threatened impact on competition." *Lozano v. AT&T Wireless Servs. Inc.,* 504 F. 3d 718, 735 (9th Cir. 2007).

///

///

CLARKSON LAW FIRM, P.C.
22525 Pacific Coast Highway
Malibu, CA 90265

114.   Defendant's labeling and advertising of the Products is false, deceptive, misleading, and unreasonable, and constitutes an unfair business practice within the meaning of California Business & Professions Code Section 17200.

115.   There were reasonably available alternatives to further Defendant's legitimate business interests other than the conduct described herein. Defendant could have marketed the Products without making any false statements about the safety of dolphins in the manufacturing of the Products.

116.   All of the conduct alleged herein occurs and continues to occur in Defendant's business. Defendant's wrongful conduct is part of a pattern or generalized course of conduct repeated on thousands of occasions daily.

117.   Pursuant to Business & Professions Code Section 17203, Plaintiff and the Class seek an order of this Court enjoining Defendant from continuing to engage, use, or employ its practice of false and deceptive advertising and labeling of the Products.  Likewise, Plaintiff and the Class seek an order requiring Defendant to disclose such misrepresentations, and additionally request an order awarding Plaintiff and the Class restitution of the money wrongfully acquired by Defendant in an amount to be determined at trial.

118.   Plaintiff and the Class have suffered injury in fact and have lost money as a result of Defendant's unfair conduct. Plaintiff paid an unwarranted premium for the Products. Plaintiff would not have purchased the Products had she known that the Products were not created in a dolphin safe manner, or certainly would not have paid a premium.

**B. "Fraudulent" Prong**

119.   California Business and Professions Code Section 17200, *et seq*. considers conduct fraudulent and prohibits said conduct if it is likely to deceive members of the public. *Bank of the West v. Superior Court,* 2 Cal. 4th 1254, 1267 (1992).

120.   Defendant's advertising and labeling of the Products as "DOLPHIN SAFE" is likely to deceive members of the public into believing that the Products are actually dolphin safe when they are manufactured using methods that kill and injure thousands of dolphins annually.

///

CLARKSON LAW FIRM, P.C.
22525 Pacific Coast Highway
Malibu, CA 90265

CLARKSON LAW FIRM, P.C.
22525 Pacific Coast Highway
Malibu, CA 90265

121.   Defendant's advertising and labeling of the Products, as alleged in the preceding paragraphs, is false, deceptive, misleading, and unreasonable and constitutes fraudulent conduct.

122.   Defendant knew or should have known of its fraudulent conduct.

123.   As alleged in the preceding paragraphs, the material misrepresentations by Defendant detailed above constitute a fraudulent business practice in violation of California Business & Professions Code Section 17200.

124.   There were reasonably available alternatives to further Defendant's legitimate business interests. Defendant could have advertised and labeled the Products without making the false and deceptive "DOLPHIN SAFE" statements.

125.   Defendant's wrongful conduct is part of a pattern or generalized course of conduct repeated on thousands of occasions daily.

126.   Pursuant to Business & Professions Code Section 17203, Plaintiff and the Class seek an order of this Court enjoining Defendant from continuing to engage, use, or employ its practice of false and deceptive advertising of the Products.  Likewise, Plaintiff and the Class seek an order requiring Defendant to disclose such misrepresentations, and additionally request an order awarding Plaintiff restitution of the money wrongfully acquired by Defendant in an amount to be determined at trial.

127.   Plaintiff and the Class have suffered injury in fact and have lost money as a result of Defendant's fraudulent conduct. Plaintiff paid an unwarranted premium for the Products. Plaintiff would not have purchased the Products if she had known that the Products were not sold as advertised.

128.   **Injunction.** Pursuant to Business and Professions Code Sections 17203, Plaintiff and the California Subclass seek an order of this Court enjoining Defendant from continuing to engage, use, or employ its practice of labeling the Products with the "DOLPHIN SAFE" representation.

### C. "Unlawful" Prong

129.   California Business and Professions Code Section 17200, *et seq.,* identifies violations of other laws as "unlawful practices that the unfair competition law makes

1  independently actionable." *Velazquez v. GMAC Mortg. Corp.,* 605 F. Supp. 2d 1049, 1068 (C.D.

2  Cal. 2008).

3       130.   Defendant's advertising of the Products, as alleged in the preceding paragraphs,

4  violates California Civil Code Section 1750, *et seq.,* California Business and Professions Code

5  Section 17500, *et seq.*

6       131.   Defendant's packaging, labeling, and advertising of the Products as being

7  "DOLPHIN SAFE" are false, deceptive, misleading, unfair, unlawful, and unreasonable.

8       132.   Defendant knew or should have known of its unlawful conduct.

9       133.   **Violations of Bus. & Prof. Code 17580,** *et seq.* **(Environmental Advertising).**

10 Section 17580.5 makes it "unlawful for a person to make an untruthful, deceptive, or misleading

11 environmental marketing claim, whether explicit or implied," and defines environmental

12 marketing claims consistent with the Green Guides. The Green Guides caution marketers that "[i]t

13 is deceptive to misrepresent, directly or by implication, that a product, package, or service offers a

14 general environmental benefit," and warns marketers that such claims, for example, lead

15 consumers to believe that the seller's wares have no negative environmental impact. 16 C.F.R. §

16 260.4. Similarly, section 17580 also identifies several examples of environmental labeling claims

17 that are interpreted to mean that the product will not harm the environment, including:

18 "environmental choice," "ecologically friendly," "earth friendly," "environmentally friendly,"

19 "ecologically sound," "environmentally sound," "environmentally safe," "ecologically safe,"

20 "environmentally lite," "green product," and similar terms. Indeed, section 17581 not only

21 criminalizes such deceptive marketing claims, but authorizes the Court to award monetary

22 penalties. The Merriam-Webster standard dictionary defines "environment" as "the complex of

23 physical, chemical, and biotic factors (such as climate, soil, and living things) that act upon an

24 organism or an ecological community and ultimately determine its form and survival." (emphasis

25 added). As previously and subsequently outlined, this case concerns the use of fishing methods

26 that are known to kill or cause harm to dolphins. Dolphins are a vital part of the natural

27 environment not only because they are living creatures but because they keep ecosystems in

28 balance, disperse nutrients, and mix water in stratified oceans and rivers.  Thus, in labeling and

CLARKSON LAW FIRM, P.C.
22525 Pacific Coast Highway
Malibu, CA 90265

advertising its Products as "DOLPHIN SAFE" while simultaneously using longline and similarly harmful fishing methods to harvest tuna, Defendant is violating California law.

134.   As alleged in the preceding paragraphs, the misrepresentations by Defendant detailed above constitute an unlawful business practice within the meaning of California Business and Professions Code Section 17200.

135.   There were reasonably available alternatives to further Defendant's legitimate business interests. Defendant could have truthfully labeled and advertised the Products.

136.   All of the conduct alleged herein occurred and continues to occur in Defendant's business. Defendant's wrongful conduct is part of a pattern or generalized course of conduct repeated on thousands of occasions daily.

137.   Pursuant to Business and Professions Code Section 17203, Plaintiff and the Class seek an order of this Court enjoining Defendant from continuing to engage, use, or employ its practice of false and deceptive advertising of the Products. Plaintiff and the Class also seek an order requiring Defendant to disclose such misrepresentations, and additionally request an order awarding Plaintiff restitution of the money wrongfully acquired by Defendant in an amount to be determined at trial.

138.   Plaintiff and the Class have suffered injury in fact and have lost money as a result of Defendant's unlawful conduct. Plaintiff paid an unwarranted premium for the Products. Plaintiff would not have purchased the Products if she had known that Defendant deceived consumers into believing the Products were "DOLPHIN SAFE."

## COUNT FOUR

### Breach of Express Warranty

### *(Brought on behalf of the Class)*

139.   Plaintiff repeats and re-alleges the allegations of the previous paragraphs and incorporates the same as if set forth herein at length.

140.   Defendant expressly warrants that the Products are "DOLPHIN SAFE," meaning they were sourced from fishing methods that do not kill or harm dolphins.  Defendant's claims constitute an affirmation of fact, promise, and/or description of the goods that became part of the

CLARKSON LAW FIRM, P.C.
22525 Pacific Coast Highway
Malibu, CA 90265

CLARKSON LAW FIRM, P.C.
22525 Pacific Coast Highway
Malibu, CA 90265

basis of the bargain and created an express warranty that the goods would conform to the stated promise. Plaintiff placed importance on Defendant's claims.

141.   By advertising and selling the Products at issue, Defendant made promises and affirmations of fact on the Products' packaging and labeling, and through its marketing and advertising, as described herein. This labeling and advertising constitute express warranties and became part of the basis of the bargain between Plaintiff and members of the Class and Defendant. Defendant purports, through the Products' labeling and advertising, to create express warranties that the Products, among other things, conform to the challenged "DOLPHIN SAFE" representation.

142.   All conditions precedent to Defendant's liability under this contract have been performed by Plaintiff and the Class.

143.   Defendant breached the terms of the contract, including the express warranties, with Plaintiff and the Class by not providing Products that conform to the "DOLPHIN SAFE" advertising and label claims.

144.   As a result of Defendant's breach of contract, Plaintiff and the Class have been damaged in an amount to be determined at trial.

## COUNT FIVE

### Breach of Implied Warranty

### *(Brought on behalf of the Class)*

145.   Plaintiff repeats and re-alleges the allegations set forth above and incorporates the same as if set forth herein at length.

146.   Unless excluded or modified, a warranty that a good shall be merchantable is implied in a contract for their sale, if the seller is a merchant with respect to goods of that kind.

147.   Defendant is a merchant with respect to the Products, as it manufactures, distributes, and sells the Products nationwide.

148.   In order to be merchantable, goods must conform to the promises or affirmations of fact made on the container or labeling.

149.   Defendant breached the implied warranty of merchantability to Plaintiff and the

Class in that the labels of the Products promised and affirmed that the Products were "DOLPHIN SAFE," meaning they were sourced using fishing methods which do not kill or injure dolphins.

150.   Contrary to the promise and affirmation of fact, the Products do not conform to the challenged "DOLPHIN SAFE" representations and, therefore, Defendant breached its warranties about the Products and their qualities.

151.   As a direct and proximate result of Defendant's breach of its implied warranty, Plaintiff and members of the Class have suffered and continue to suffer economic losses and other damages including, but not limited to, the amounts paid for the Products, and any interest that would have accrued on those monies, in an amount to be proven at trial.

152.   Defendant did not exclude or modify the Products' implied warranty of merchantability.

153.   Plaintiff and the Class are therefore entitled to recover all available remedies for said breach.

## COUNT SIX

### Restitution Based on Quasi-Contract/Unjust Enrichment

### (*Brought on behalf of the Class*)

154.   Plaintiff repeats and re-alleges the allegations set forth above and incorporates the same as if set forth herein at length.

155.   Plaintiff brings this cause of action individually and on behalf of the members of the Class against Defendant.

156.   By means of Defendant's wrongful conduct alleged herein, Defendant knowingly sold the Products to Plaintiff and members of the Class in a manner that was unfair, unconscionable, and oppressive.

157.   Defendant knowingly received and retained wrongful benefits and funds from Plaintiff and members of the Class. In so doing, Defendant acted with conscious disregard for the rights of Plaintiff and members of the Class.

158.   As a result of Defendant's wrongful conduct as alleged herein, Defendant has been unjustly enriched at the expense of, and to the detriment of, Plaintiff and members of the Class.

CLARKSON LAW FIRM, P.C.
22525 Pacific Coast Highway
Malibu, CA 90265

159.   Defendant's unjust enrichment is traceable to, and resulted directly and proximately from, the conduct alleged herein.

160.   Under the common law doctrine of unjust enrichment, it is inequitable for Defendant to be permitted to retain the benefits it received, without justification, from selling the Product to Plaintiff and members of the Class in an unfair, unconscionable, and oppressive manner. Defendant's retention of such funds under such circumstances constitutes unjust enrichment.

161.   The financial benefits derived by Defendant rightfully belong to Plaintiff and members of the Class. Defendant should be compelled to return in a common fund for the benefit of Plaintiff and members of the Class all wrongful or inequitable proceeds received by Defendant.

162.   Plaintiff and members of the Class have no adequate remedy at law.

### **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, individually and on behalf of the Class defined herein, pray for judgment and relief on all Causes of Action as follows:

a. **Certification**: For an order certifying this action as a class action, appointing Plaintiff as the Class Representative, and appointing Plaintiff's Counsel as Class Counsel;

b. **Declaratory Relief**: For an order declaring that Defendant's conduct violates the statutes and laws which underpin this action;

c. **Injunction**: For an order enjoining Defendant from continuing to market, advertise, label, distribute, and sell the Products in the unlawful manner described herein; and requiring all further and just corrective action, consistent with permissible law and pursuant to only those causes of action so permitted.

d. **Damages/Restitution/Disgorgement**: For an order awarding monetary compensation in the form of damages, restitution, and/or disgorgement to Plaintiff and the Class, consistent with permissible law and pursuant to only those causes of action so permitted;

e. **Attorneys' Fees and Costs**: For an order awarding attorneys' fees and costs, consistent with permissible law and pursuant to only those causes of action so permitted;

///

///

CLARKSON LAW FIRM, P.C.
22525 Pacific Coast Highway
Malibu, CA 90265

CLARKSON LAW FIRM, P.C.
22525 Pacific Coast Highway
Malibu, CA 90265

f. **Pre/Post-Judgment Interest**: For an order awarding pre-judgment and post-judgment interest, consistent with permissible law and pursuant to only those causes of action so permitted; and

g. **All Just and Proper Relief**: For such other and further relief as the Court deems just and proper.

## JURY TRIAL DEMANDED

Plaintiff demands a jury trial on all triable issues.

DATED: July 27, 2022                    **CLARKSON LAW FIRM, P.C.**

/s/ Bahar Sodaify
Ryan J. Clarkson, Esq.
Bahar Sodaify, Esq.
Christina N. Mirzaie, Esq.

*Attorneys for Plaintiff*

CLASS ACTION COMPLAINT