UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MELINDA WRIGHT,<br><br>    Plaintiff,<br><br>    v.<br><br>COSTCO WHOLESALE CORPORATION,<br><br>    Defendant. | Case No. 22-cv-04343-WHO<br><br>**ORDER DENYING MOTION TO DISMISS**<br><br>Re: Dkt. No. 26 |

Defendant Costco Wholesale Corp. ("Costco") moves to dismiss a class action complaint filed by plaintiff Melinda Wright alleging that Costco's representations that its canned tuna is "dolphin safe" are false, deceptive, and misleading. Wright has adequately alleged a heightened promise by Costco that its product is dolphin-safe, above what the Dolphin Protection Consumer Information Act ("DPCIA") requires. Her claims are not preempted and the doctrine of primary jurisdiction does not apply. She has satisfied Federal Rule of Civil Procedure 9(b)'s pleading requirement for fraud and adequately alleged that a reasonable consumer would be deceived by Costco's representations. The motion is DENIED.

## BACKGROUND

The 58-page First Amended Complaint ("FAC") includes a host of background information about fishing practices and legislation, along with allegations more specific to Wright's claims. *See generally* FAC [Dkt. No. 21]. I will focus on the allegations most relevant to the motion at hand.

In 2021, Wright purchased a package of eight cans of Kirkland Signature White Albacore Tuna in Water ("the product" or "the products") from a Costco store in Ukiah, California. FAC ¶¶ 1, 9. In doing so, the FAC alleges, she relied upon promises and representations by Costco on the

product's labeling, packaging, and advertising that the product was "dolphin safe." *Id.* ¶ 9. Because of those representations, Wright believed that the tuna "were caught using fishing methods that do not kill or harm dolphins." *Id.*

The FAC describes an "extensive marketing campaign" by Costco "premised on its dolphin safety and sustainability promises and representations." *Id.* ¶ 36. Those alleged promises and representations include:

- Costco's unique "dolphin safe" logo on the product label and packaging, along with the product listing on its website;

- Statements that the products are "dolphin safe" on the product packaging and Costco's website;

- Statements on the product packaging that it is "100% Traceable from Sea to Shelf" and uses "100% Monofilament Leaders & Circle Hooks";

- Costco's promises, "via its tuna supplier," that it "[does] not and will not utilize tuna caught in a manner that harms dolphins" and that "[p]roviding consumers with sustainable and dolphin safe tuna remains a top priority";

- Costco's emphasis on its participation in the International Seafood Sustainability Foundation ("ISSF"), "which promises to prioritize the long-term conservation and sustainable use of tuna stocks, illegal fishing prevention, reducing bycatch and promoting ecosystem health";

- Costco's indication that it is a founding member of the Seafood Taskforce, "which promises to focus on Illegal, Unreported, and Unregulated Fishing ('IUU') and specific and measurable work plans for addressing supply chain traceability";

- Costco's statement on its "Sustainable Fisheries & Aquaculture" webpage that the "primary objectives of its seafood sourcing policy are to 'continue to improve sustainably sourced seafood from either wild fisheries or farmed aquaculture in ways that meet current standards without compromising the availability of scarce resources for future generations'";

- Costco's statement that "in sourcing its seafood, it considers 'the protection of and respect of the marine, coastal, and freshwater ecosystems; and practices that will mitigate or limit environmental impacts associated with aquaculture and fishing practices."

*See id.* (citing Exs. 2-7). According to the FAC, Costco represents to consumers that its products are dolphin-safe "by representing that its tuna is sustainably sourced in a manner than does not

2

harm or kill dolphins." *Id*. ¶ 49. But, it alleges, "these representations are false and deceptive because the manufacturing of the products involve unsustainable fishing practices that are known to kill and harm dolphins and other marine life." *Id*.

The FAC takes issue with a few of those practices. It alleges that Costco's representation that the tuna is caught using "100% Monofilament Leaders & Circle Hooks" causes consumers to "reasonably believe that this method of fishing is sustainable and dolphin-safe." *Id*. ¶ 61. Instead, it contends, "[m]onofilament leaders . . . are not sustainable or dolphin-safe because they are hazardous to marine mammals like dolphins, sea turtles, sharks, and sea birds which become entangled in or ingest the almost invisible wire, leading to injury and death." *Id*. The FAC further alleges that monofilament lines are commonly used in longline fishing, which "is one of the most damaging fishing methods to dolphins and marine ecosystems" and "is known to kill and seriously harm various dolphin species" by attracting and snagging dolphins, among other marine life, as unintentional bycatch. *Id*. ¶¶ 62-64. And, according to the FAC, although circle hooks "decrease the likelihood that the hooks will be swallowed by fish and cetaceans alike, it is well known that when hooked, dolphins can and do drown if not released in time." *Id*. ¶ 61.[1]

The FAC also takes aim at Costco's "promises that the products are '100% Traceable from Sea to Shelf,'" which it contends led Wright and other reasonable consumers "to believe that they can trace the tuna product they purchase all the way back to where it was caught." *Id*. ¶ 74. Instead, it alleges, "consumers are unable to access any tracing information on [Costco's] website or packaging." *Id*. Not only does Costco's tracing system only cover shrimp products and not tuna, the FAC contends, but Costco and its suppliers are "not able to trace their tuna '100%' from sea to shelf because of data issues, supply chain complexities, and even human error." *Id*. ¶ 75.

Also relevant to this motion are the efforts that federal legislators have made to better protect marine life. *See id*. ¶¶ 15, 22. The DPCIA, part of the Marine Mammal Protection Act, established an official "dolphin safe" label and outlines situations in which that label may or may not lawfully be used. *See id*. ¶ 22. According to the FAC, the DPCIA was enacted "[i]n response

---

[1] Dolphins are "small-toothed cetaceans." FAC ¶ 16.

to the increase in consumer demand for dolphin-safe tuna" and in "recognition that consumers wanted to know if the tuna they purchased was dolphin-safe." *Id.*

The FAC alleges that Costco "deceives consumers by promising a higher dolphin-safe standard [than] what the DPCIA requires and then breaks that promise by utilizing fishing methods known to harm and kill dolphins." *Id.* ¶ 84. It further alleges that Wright and reasonable consumers "relied and rely on [Costco's] false labeling and advertising claims that the products are 'dolphin safe' in making the decision to purchase the products," and that had Wright known that the products were not dolphin-safe, she "would not have purchased the products, and certainly would not have paid a 'premium' for such a valued perceived benefit." *See id.* ¶¶ 9, 91.

Wright filed this suit on July 27, 2022. Dkt. No. 1. After Costco moved to dismiss, she filed the FAC, which alleges six claims: violations of California's Consumers Legal Remedies Act ("CLRA"), False Advertising Law ("FAL"), and Unfair Competition Law ("UCL") (on behalf of the California subclass), along with breaches of express and implied warranty, and unjust enrichment (on behalf of the nationwide class). *See* Dkt. No. 17; *see also* FAC ¶¶ 96, 112-197. Costco again moved to dismiss. Dkt. No. 26.

## LEGAL STANDARD

### I. RULE 12(B)(1)

Under Federal Rule of Civil Procedure 12(b)(1), a district court must dismiss a complaint if it lacks subject matter jurisdiction over the claims alleged within. "Standing is a threshold matter central to our subject matter jurisdiction." *Bates v. United Parcel Serv., Inc.*, 511 F.3d 974, 985 (9th Cir. 2007). To establish standing, a plaintiff must demonstrate that she has "suffered a concrete and particularized injury that is either actual or imminent" (an injury-in-fact), that "the injury is fairly traceable to the defendant" (causation), and that "it is likely that a favorable decision will redress that injury" (redressability). *See Massachusetts v. EPA*, 549 U.S. 497, 517 (2007). "The Supreme Court has made clear that when considering whether a plaintiff has Article III standing, a federal court must assume arguendo the merits of his or her legal claim." *Zeiger v. WellPet LLC*, 304 F. Supp. 3d 837, 843 (N.D. Cal. 2018) (citation omitted).

4

## II. RULE 12(B)(6)

Under Federal Rule of Civil Procedure 12(b)(6), a district court must dismiss a complaint if it fails to state a claim upon which relief can be granted. To survive a Rule 12(b)(6) motion, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible when the plaintiff pleads facts that allow the court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). There must be "more than a sheer possibility that a defendant has acted unlawfully." *Id.* While courts do not require "heightened fact pleading of specifics," a plaintiff must allege facts sufficient to "raise a right to relief above the speculative level." *See Twombly*, 550 U.S. at 555, 570.

In deciding whether the plaintiff has stated a claim upon which relief can be granted, the court accepts her allegations as true and draws all reasonable inferences in her favor. *Usher v. City of Los Angeles*, 828 F.2d 556, 561 (9th Cir. 1987). However, the court is not required to accept as true "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008).

## III. RULE 9(B)

Claims sounding in fraud are subject to the heightened pleading standard of Federal Rule of Civil Procedure 9(b), which requires that such claims "state with particularity the circumstances constituting fraud or mistake," including the "who, what, when, where, and how of the misconduct charged." *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003) (citation and quotation marks omitted). "The plaintiff must set forth what is false or misleading about a statement, and why it is false." *Id.* (same). The allegations must be "specific enough to give defendants notice of the particular misconduct" which is alleged to constitute the fraud charged "so that they can defend against the charge and not just deny that they have done anything wrong." *See Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124 (9th Cir. 2009) (citation omitted).

## DISCUSSION

### I. REQUEST FOR JUDICIAL NOTICE

Costco requests judicial notice of portions of a Federal Trade Commission ("FTC")

5

response to a Freedom of Information Act dated September 15, 2020. Dkt. No. 26-1. The attached exhibit includes nearly 60 pages of documents of varying types, including the FTC's response letter, the receipt for the documents, a copy of a regulation on dolphin-safe labeling standards, a press release from the Animal Legal Defense Fund, and an FTC complaint filed by the Animal Legal Defense Fund. *See* RJN, Ex. 1. Wright objects to the request, describing the material as "irrelevant, misleading, and/or disputed 'evidence' and facts." Dkt. No. 32.

Costco's request is DENIED. Of the exhibit's nearly 60 pages, Costco cites excerpts from a single paragraph in its motion to dismiss. *See* Mot. to Dismiss ("MTD") [Dkt. No. 26] 10:12-17, 18:23-19:2. Moreover, Costco overstates the source of those excerpts, which it portrays as an FTC decision "rejecting" an "enforcement action based on a hypothetical 'gap between what consumers understand "dolphin-safe" to mean and what "dolphin-safe" means as defined in the relevant statutes.'" *See, e.g., id*. at 10:12-17 (citing RJN, Ex. 1 at 009-010).[2] The source is actually a letter from an FTC staff member responding to a petition from the Animal Legal Defense Fund that expressly states that the "views expressed in this letter are those of the staff assigned to the matter," that the letter "has not been reviewed or approved by the Commission or by an individual Commissioner," and that it "is not binding." *See* RJN, Ex. 1 at 010.

I may only judicially notice a fact that is not subject to reasonable dispute because it is either generally known within this court's territorial jurisdiction or "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." *See* Fed. R. Evid. 201(b). Neither reason applies here.

**II.     STANDING**

Of the three standing requirements, Costco challenges only one: injury. *See* MTD at 21:17-23:1. To establish an injury for the purposes of standing, a plaintiff must show "an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992) (citations and quotation marks omitted). "Central to assessing concreteness is whether the asserted harm has

---

[2] The page numbers reference the last three digits of the numbers stamped at the bottom right of each page of the exhibit.

a close relationship to a harm traditionally recognized as providing a basis for a lawsuit in American courts—such as a physical harm, monetary harm, or various intangible harms." *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2200 (2021) (citation omitted).

Costco argues that Wright has not alleged a concrete injury because the FAC "does not allege that any tuna [she] purchased from Costco came from a vessel that either deployed a net that encircled any dolphin or that killed or seriously injured any dolphin." MTD at 22:2-4. And, it contends, "[t]here is no concrete injury to [Wright] that arises from the mere speculative *possibility* that dolphins could have been harmed or seriously injured through use of longline fishing methods." *Id*. at 22:15-16 (emphasis in original).

Costco misses the crux of Wright's complaint. The FAC alleges that, had Wright known that Costco's canned tuna was not dolphin-safe, she would not have bought it, "and certainly would not have paid a 'premium' for such a valued perceived benefit." FAC ¶ 9. As alleged, Wright was harmed by paying for a product that she would not have purchased but for Costco's deceptive statements, and/or by paying a premium price for that product. *See id*. The same type of injury was enough to establish standing in *Gardner v. Starkist Co.*, 418 F. Supp. 3d 443, 458-59 (N.D. Cal. 2019)—a case that will continue to guide my analysis of the one at hand—where the plaintiffs alleged that they would not have purchased StarKist tuna "but for the dolphin-safe promise." This also aligns with the well-established principle that a monetary harm is a sufficiently concrete injury. *See, e.g. TransUnion*, 141 S. Ct. at 2200; *Maya v. Centex Corp.*, 658 F.3d 1060, 1069 (9th Cir. 2011) (describing the allegation that "plaintiffs spent money that, absent defendants' actions, they would not have spent" as a "quintessential injury-in-fact"). The FAC clearly alleges a monetary harm in the $15 that Wright paid for the product. *See* FAC ¶ 9.

Costco's motion to dismiss the FAC for lack of standing is DENIED.

### III. THE MERITS OF THE CLAIMS

Costco's remaining arguments flow from its apparent understanding of the case as "essentially an attack on Costco's use of a dolphin safe logo, authorized by the DPCIA" and "a direct challenge to the DPCIA uniform 'dolphin safe' labeling standard." *See* MTD at 2:20-23, 11:26-12:3. Yet Costco also notes that the FAC does not allege that "Costco violated the DPCIA

7

in any way." *Id*. at 5:16-19. This makes sense; Wright's claims focus not on whether Costco complied with the DPCIA's labeling requirements but on Costco's own representations that the product is dolphin-safe and whether those representations were false and misleading in violation of California law, or constituted a breach of warranty or unjust enrichment. *See generally* FAC. The question is whether Costco violates its own promises to consumers, not the DPCIA. I made the same distinction in *Gardner*, which both parties rely on heavily in their briefing. *See* 418 F. Supp. 3d at 454-55.

Costco's core argument is essentially this: Wright has not adequately alleged that Costco set its own dolphin-safe standard higher than that required by the DPCIA, as the plaintiff did in *Gardner*. *See* MTD at 12:6-13:27. It attacks the statements and representations cited in the FAC, arguing that only one—Costco's "dolphin safe" logo on the product label—"is both about dolphin safe[ty] and attributed to Costco." *See id*. at 13:28-14:9. Costco further contends that the use of that logo alone does not amount to a heightened promise that the product is dolphin-safe. *See id*. at 14:8-9. This underlies Costco's arguments that: (1) Wright's claims are preempted by the DPCIA; and (2) the case should be dismissed or stayed under the doctrine of primary jurisdiction. *See id*. at 15:25-21:15. Costco argues that the FAC does not sufficiently allege any heightened promise by Costco that the product is dolphin-safe, beyond what is required by the DPCIA, relying on a distinction between the allegations at hand and those made in *Gardner*. *See id*. at 12:15-13:27.

To be sure, *Gardner* is distinguishable on certain facts. There, the plaintiffs sufficiently alleged that they believed that StarKist "set itself to a high dolphin-safe standard" because they alleged a "long-term, pervasive advertising campaign" that "led consumers to believe no dolphins were harmed in the making of their tuna products." *See Gardner*, 418 F. Supp. 3d at 456-57. More specifically, the plaintiffs alleged that: (1) StarKist was the first major tuna company to adopt a dolphin-safe policy in 1990, which one executive said would "save dolphin lives"; (2) StarKist products included a dolphin-safe logo and directed consumers to visit its website for more information on its policy; (3) StarKist made a statement after a 2012 World Trade Organization ("WTO") ruling on fishing methods, in which it "emphasized that '[p]roviding consumers with

sustainable and dolphin safe tuna remains a top priority'" and that it did not and would not "utilize tuna caught in a manner that harms dolphins"; and (4) StarKist reiterated its "dolphin-safe pledge" in various social media posts. *See id*. at 456.

There is some overlap between these and the instant allegations but there are differences as well. For example, although Costco also uses its own dolphin-safe logo on the products, as alleged, there is nothing on the cans that direct consumers to visit Costco's website for additional information. *See* FAC ¶ 37. The FAC also identifes similar statements made after the 2012 WTO ruling but attributes them to Costco's tuna *supplier*, not Costco itself. *See id*. ¶ 41. And aside from the dolphin-safe logo on the packaging, the FAC does not allege any specific statements by Costco that its tuna is dolphin-safe—whether made by Costco executives, on social media, or elsewhere. *See generally id*. Instead, the FAC alleges more generalized statements by Costco about sustainable seafood sourcing and related practices. *See id*. ¶¶ 42-43.

That said, the FAC plausibly alleges a heightened promise by Costco that its canned tuna is dolphin-safe. The product label and packaging both state that the tuna is "dolphin safe," as does the product listing on Costco's website. *See id*. ¶ 37. The packaging further states that the product is "100% Traceable from Sea to Shelf" and uses "100% Monofilament Leaders & Circle Hooks." *Id*. ¶ 38. Costco also touts on its website sustainable seafood sourcing efforts and highlights its participation in the ISSF. *See id*. ¶ 36. Although the latter statements and representations are not as specific to dolphin safety as some of those made in *Gardner*, the alleged statements encompass "the protection of and respect for the marine, coastal, and freshwater ecosystems"; "practices that will mitigate or limit environmental impacts associated with aquaculture and fishing practices"; and efforts aimed at "the long-term conservation and sustainable use of tuna stocks, reducing bycatch and promoting ecosystem health." *See id*. ¶ 42. Along with the "dolphin safe" label on the product and its packaging, the "dolphin safe" assertion on the online product listing, and the statements about traceability and fishing practices on the product labels, this is enough—at least at this stage of the litigation—to show that Costco has made its own, heightened promise that the product is dolphin-safe.

Accordingly, Wright's claims are not preempted by the DPCIA. *See* MTD at 11:13-20:15.

Again, my analysis in *Gardner* applies. StarKist argued that the plaintiffs' state law claims were preempted by the DPCIA, missing two critical points: (1) that the claims were "not premised on DPCIA violations, but on how StarKist fraudulently advertised its own heightened dolphin-safe standard"; and (2) that "[e]ven the DPCIA itself recognizes that falsely labeled dolphin-safe tuna is a violation of the Federal Trade Commission Act ["FTCA"], not a violation of the DPCIA." *See Gardner*, 418 F. Supp. 3d at 459 (citing 16 U.S.C. § 1385(d)(3)(C), (E)). I reasoned that "[w]here the FTC has been given authority to police violations of federal advertising regulations, as it has under the DPCIA, its enforcement does not preempt similar state law claims" unless the state laws conflicted with an express FTC rule. *See id*. "For example," I wrote, "claims that are based on a defendant's alleged fraud on a federal agency are preempted because each agency has the authority to police such claims." *Id.* But in *Gardner*, the alleged fraud was "about the misrepresentations StarKist made to consumers, not to another federal agency," so the state law claims were not preempted. *See id*.

My thinking on this has not changed since *Gardner*, nor has Costco proffered any argument that persuades me that it should. Costco accuses Wright of "attempting to use state law to impose dolphin safe labeling requirements that are more strict or vary from the federal requirements," thereby encroaching "into each and every policy that Congress carefully balanced in creating a federal regulatory framework that fully and comprehensively set the standards for dolphin safe labeling in the tuna industry and for consumers." MTD at 17:4-8. But the "mere existence of a federal regulatory or enforcement scheme," even a detailed one, "does not by itself imply preemption of state remedies." *English v. Gen. Elec. Co.*, 496 U.S. 72, 87 (1990). And, to repeat, this case is not about whether Costco complied with DPCIA's labeling requirements. It is about Costco's own promise to consumers that the product was dolphin-safe, and whether that statement was false, deceptive, or misleading. Field preemption does not apply.

Nor am I swayed by Costco's argument that Wright's claims are conflict preempted. Conflict preemption occurs "where compliance with both federal and state regulations is a physical impossibility and those instances where the challenged state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Arizona v.*

10

*United States*, 567 U.S. 387, 399-400 (2012) (citations and quotation marks omitted). Costco contends that Wright's state law claims "stand[] as an obstacle to the DPCIA's objectives of (a) setting a uniform definition of dolphin safe in tuna labeling, and (b) creating a specific regime to monitor and enforce labeling to ensure consistency with that definition." MTD at 18:5-8. But Wright's state law claims do not impose another definition of what is dolphin-safe, create any enforcement scheme, or otherwise seek to enforce the DPCIA. Instead, she seeks "to hold [Costco] accountable under California's consumer protection laws for the false and misleading advertising of its own heightened 'dolphin safe' representations." Oppo. [Dkt. No. 31] 9:16-19. Whether that promise was false or misleading is central to this case, not whether Costco followed the DPCIA. As in *Gardner*, conflict preemption does not apply.

And applying the doctrine of primary jurisdiction would be improper for the same reason. "Primary jurisdiction is a prudential doctrine that permits courts to determine that an otherwise cognizable claim implicates technical and policy questions that should be addressed in the first instance by the agency with regulatory authority over the relevant industry rather than by the judicial branch." *Astiana v. Hain Celestial Grp., Inc.*, 783 F.3d 753, 760 (9th Cir. 2015) (citation omitted). Costco argues that Wright's claims should be dismissed or stayed "because the enforcement authorities for the relevant statutes are the FTC and NOAA, not the courts." MTD at 20:18-19.[3] But the relevant statutes are California's consumer protection laws, not the DPCIA or FTCA. Even if Wright's claims implicated the expertise of these federal agencies, invocation of primary jurisdiction is not automatic. *See Astiana*, 783 F.3d at 760 ("Not every case that implicates the expertise of federal agencies warrants invocation of primary jurisdiction. Rather, the doctrine is reserved for a limited set of circumstance that requires resolution of an issue of first impression, or of a particularly complicated issue that Congress has committed to a regulatory agency.") (citation and quotation marks omitted). This case does not present an issue of first impression (as evidenced by *Gardner*), nor a particularly complicated issue congressionally

---

[3] The National Oceanic and Atmospheric Administration ("NOAA") has authority to "assess civil penalties, impose permit sanctions, issue written warnings, and/or seize and forfeit property" in response to violations of the DPCIA. *See* 15 C.F.R. § 904.1(c).

11

committed to a regulatory agency.

What remains are Costco's arguments that Wright failed to meet Rule 9(b)'s heightened pleading standard for fraud or adequately allege that Costco's statements were likely to deceive a reasonable consumer. *See* MTD at 23:2-25:15. I disagree.

The FAC states with particularly the circumstances constituting the alleged fraud, including the "who, what, when, where, and how of the misconduct charged." *See Vess*, 317 F.3d at 1106. Wright alleges that Costco (who) made false, misleading, and deceptive representations that the product is dolphin-safe (what) on the product's labeling, packaging, and advertising (where) during the four-year class period and, more specifically, in 2021 when Wright purchased the product (when), and that those representations were false because instead of using dolphin-safe and sustainable sourcing practices, Costco uses fishing methods known to kill and injure dolphins (how). *See* FAC ¶¶ 9, 11, 36, 61-64, 74-75, 98. These allegations are specific enough to provide Costco notice of the particular conduct at issue so that it can defend against the fraud claims. *See Kearns*, 567 F.3d at 1124. The FAC also alleges that Wright "relied upon [Costco's] 'dolphin safe' promises and representations on the product's labeling, packaging, and advertising" in purchasing the product. FAC ¶ 9.

Wright's claims under California's consumer protection laws are governed by the "reasonable consumer" test, under which she must "show that members of the public are likely to be deceived" by Costco's representation. *See Williams v. Gerber Prods. Co.*, 552 F.3d 934, 938 (9th Cir. 2008) (citation and quotation marks omitted). "This requires more than a mere possibility" that Costco's statement "might conceivably be misunderstood by some few consumers viewing it in an unreasonable manner." *See Becerra v. Dr Pepper/Seven Up, Inc.*, 945 F.3d 1225, 1228 (9th Cir. 2019) (citations omitted). Instead, it "requires a probability that a significant portion of the general consuming public or of targeted consumers, acting reasonably in the circumstances, could be misled." *Id*. (citation and quotation marks omitted).

Wright has made this showing, at least at this stage of the litigation. As the Ninth Circuit has recognized, "[g]iven the choice of whether to purchase dolphin-safe tuna or to purchase tuna not labeled dolphin-safe, American consumers overwhelmingly chose to purchase tuna that was

labeled dolphin-safe." *See Earth Island Inst. v. Hogarth*, 494 F.3d 757, 761 (9th Cir. 2007). Wright alleges as much in the FAC.  *See* FAC ¶ 85 (citing the same).  Against this backdrop, the dolphin-safe logo on the product label, packaging, and online advertising would lead a reasonable consumer to believe that the product was indeed dolphin-safe and did not result in harm to dolphins.  The alleged statements about Costco's sustainable seafood sourcing and related practices only bolster this already-reasonable belief.

In sum, Wright has adequately alleged a promise by Costco that the product is dolphin-safe, above what the DPCIA requires.  As a result, her claims are not preempted, nor is the doctrine of primary jurisdiction applicable.  Moreover, she has satisfied Rule 9(b)'s heightened pleading requirement for fraud and alleged that a reasonable consumer would be deceived by Costco's representations.  Her claims are plausible.

## CONCLUSION

Costco's motion to dismiss is DENIED.

**IT IS SO ORDERED.**

Dated: January 17, 2023

William H. Orrick
United States District Judge